834 F.2d 635
 20 Soc.Sec.Rep.Ser. 20, Unempl.Ins.Rep. CCH 17,683
Benny WALKER, Plaintiff-Appellant, Cross-Appellee,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee, Cross-Appellant.
 Nos. 86-3068, 86-3160.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 3, 1987.
Decided Nov. 24, 1987.
 
 Lisa R. Hayes, Legal Services Organization of Indiana, Indianapolis, Ind., for plaintiff-appellant, cross-appellee.
 Michael T. Lamb, Office of Gen. Counsel, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee, cross-appellant.
 Before EASTERBROOK and RIPPLE, Circuit Judges, and GRANT, Senior District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 This case is an appeal from the denial of Social Security disability benefits to Benny Walker by the Secretary of Health and Human Services (the Secretary). Mr. Walker seeks disability benefits for the period from December 12, 1981 to December 29, 1983. To be eligible for such benefits, the claimant must show that he has been totally disabled for at least twelve consecutive months. The Secretary denied benefits and Mr. Walker appealed that decision to the district court. The district court reversed the Secretary's decision with respect to the first part of the period in dispute and awarded disability benefits to Mr. Walker for the time from December 12, 1981 through July 7, 1983. Then, in the second portion of its decision, the district court upheld the denial of benefits for the time from July 7, 1983 to December 29, 1983.
 
 
 2
 Mr. Walker now appeals from the district court's ruling denying benefits from July 8 to December 29, 1983; the Secretary cross-appeals from the district court's award of benefits from December 12, 1981 to July 7, 1983. We reverse that portion of the judgment which granted Mr. Walker benefits from December 12, 1981 through July 7, 1983. We affirm that portion of the district court's judgment which approved the denial of benefits to Mr. Walker for the period after July 8, 1983.
 
 FACTS
 
 3
 On October 14, 1980, Benny Walker injured his back while lifting a box at work. Mr. Walker went to Dr. Peter Hall, a neurosurgeon, for treatment. Dr. Hall was Mr. Walker's treating physician at all relevant times. Dr. Hall diagnosed Mr. Walker's injury as a left lumbar disc protrusion. Dr. Hall first prescribed bed rest, but Mr. Walker's condition worsened. Then, in March 1981, Dr. Hall concluded that Mr. Walker needed surgery and performed a discectomy. Mr. Walker's back pain again grew worse and Dr. Hall performed a second discectomy on July 31, 1981.
 
 
 4
 As Mr. Walker recuperated from the second operation, his back began to improve. On December 14, 1981, in response to a letter from the Disability Determination Division of Indiana Rehabilitation Services, Dr. Hall rendered the following opinion on Mr. Walker's condition:
 
 
 5
 Postoperatively [following the July 31, 1981 surgery], the patient made a significant improvement on this occasion with a marked decrease in back pain and sciatica. I last saw Benny in the Neurosurgery Clinic on December 2, 1981 at which time, he had a good range of lumbar movement, though he had some pain on straightening back up. Straight leg raising was normal at 90 degrees and was pain free.
 
 
 6
 I plan to see Benny back in February of 1982, and I feel that Benny will probably be medically fit at that time to return to work.
 
 
 7
 In conclusion, Mr. Walker has been medically unfit from October 14, 1980 thru February of 1982 secondary to a lumbar disc protrusion. I believe that he will be left with a permanent partial impairment of about 5% to 10%, the body taken as a whole.
 
 
 8
 Ex. 24, Tr. at 154-55. At the request of the Secretary, Dr. J.N. Garber examined Mr. Walker on December 11, 1981; Dr. Garber's opinion agreed substantially with that of Dr. Hall. Dr. Garber found that Mr. Walker's range of motion was nearly normal and that Mr. Walker experienced pain only upon flexion of his back. Dr. Garber further opined that, although he should lift no more than ten pounds, Mr. Walker would be able to stand and bend for short periods and could manipulate his hands and arms without difficulty. Ex. 26, Tr. at 156-58. Based on the reports of Dr. Hall and Dr. Garber, the Secretary found Mr. Walker eligible for a closed period of disability benefits from October 14, 1980 (the date of Mr. Walker's injury) to December 11, 1981 (the date of Mr. Walker's examination by Dr. Garber). Thus, the Secretary found that Mr. Walker's disability ended by December 11, 1981. Mr. Walker did not seek judicial review of that determination.
 
 
 9
 By January 1982, however, Mr. Walker again experienced problems with his back and he returned to see Dr. Hall. Dr. Hall hospitalized Mr. Walker on January 11, performed a CT scan on his back, and gave him steroid injections. The CT scan revealed no new damage to the back. The steroid injection had reduced the pain in his back. Mr. Walker was released on January 14. However, in March, Mr. Walker experienced more back pain and again visited Dr. Hall. This time Dr. Hall prescribed treatment by hanging lumbar traction. Mr. Walker improved dramatically following the traction and, by April 1982, his prognosis seemed good. On April 20, 1982, Dr. Hall reported:
 
 
 10
 When last seen in the Neurosurgery Clinic on March 31, 1982, lumbar flexion was restricted to about 15 degrees, and straight leg raising was limited to 70 degrees on the left with production of sciatica.
 
 
 11
 The patient was referred to Long Hospital for treatment with hanging lumbar traction and showed a dramatic response with virtual full recovery of the pain. I anticipate that he should be medically fit to return to work in June of 1982.
 
 
 12
 I feel Benny will always be subject to recurrent back and leg pain and that he should do no prolonged stooping or heavy lifting. I think he will be left with a 20% permanent partial impairment, the body taken as a whole, as a result of pain, previous back surgery, and limitation of lumbar range of movement and straight leg raising.
 
 
 13
 Ex. 29, Tr. at 166. On May 10, 1982, Dr. Lee Cattell examined Mr. Walker at the request of the Secretary and, like Dr. Hall, Dr. Cattell estimated that Mr. Walker had a "20% partial permanent impairment of the body as a whole." Dr. Cattell also noted that Mr. Walker was taking Tylenol # 3 to relieve his back pain. Tylenol # 3 contains codeine, a narcotic; therefore, Dr. Cattell recommended that Mr. Walker change medications to avoid addiction. Ex. 39, Tr. at 303.
 
 
 14
 Between May and November 1982, Mr. Walker apparently did not see a doctor, although he did receive physical therapy. Notes from Mr. Walker's physical therapy sessions in August reveal that Mr. Walker experienced some pain during therapy and that, on August 19, 1982, Mr. Walker reported that his pain was increasing. Ex. B-41, Tr. at 312-13. Then, on November 29, 1982, Mr. Walker once more saw Dr. Hall. Although Mr. Walker had earlier reported pain primarily in his left leg, he now felt pain in his right leg. Dr. Hall hospitalized Mr. Walker for diagnosis, and a myelogram revealed a bilateral disc protrusion. Mr. Walker then underwent approximately a month of physical therapy without improvement and, on January 18, 1983, Dr. Hall operated on Mr. Walker's back for the third time in less than two years.
 
 
 15
 Upon Mr. Walker's release from the hospital after the third surgery, Dr. Hall estimated that Mr. Walker would be unfit for work for at least four months. Ex. 29, Tr. at 241. On March 15, 1983, Dr. Hall estimated that Mr. Walker was still at least three to four months away from being ready to return to work and, further, that Mr. Walker had been totally disabled for the entire period following his injury.[1] Ex. B-30, Tr. at 251-53. During his recovery from the third operation, Mr. Walker continued to suffer from recurrent back pain and, in June 1983, he received treatment for back pain in a hospital emergency room. Ex. B-41, Tr. at 319.
 
 
 16
 By July 1983, Mr. Walker's back condition seemed to have stabilized. In July and August 1983, three doctors examined Mr. Walker and reached substantially similar conclusions. On July 7, 1983, Dr. Sae Rhee of Indiana Vocational Rehabilitation Services examined him and restricted him from lifting, bending, or stooping. Ex. B-37, Tr. at 288-89. Also on July 7, Mr. Walker was examined by Dr. K.R. Manning. Dr. Manning concluded: "This man would be a poor candidate to do bending, lifting, pushing and pulling or heavy type work, but certainly could do a seated type of occupation or intermittently seated and walking." Ex. B-35, Tr. at 260. Finally, on August 6, 1983, Dr. K. Bradley, a medical consultant for the Division of Vocational Rehabilitation, examined Mr. Walker. Dr. Bradley concluded that he should avoid lifting, bending, stooping, pushing or pulling heavy objects, and walking or standing for more than one hour. Ex. B-37, Tr. at 286. Dr. Bradley also opined that Mr. Walker's pain might result, in part, from "psychosomatic 'overlay' " and that he might have a "chronic pain syndrome." Ex. B-37, Tr. at 287. Mr. Walker also saw a psychologist, Dr. Paul Martin, who noted that he suffered from neurotic depression. Dr. Martin also believed that "psychic stress" contributed to Mr. Walker's physical discomfort, but that Mr. Walker nonetheless "should hold his own easily at jobs calling for good manual dexterity." Ex. B-36, Tr. at 263-64.
 
 
 17
 At his hearing before the Administrative Law Judge (ALJ), he testified that he took two or three Darvocets three or four times a day and wears an electronic nerve stimulator to control his pain. He also wears a back brace some of the time. Tr. at 39-40. In September 1983, Mr. Walker attempted a vocational evaluation program with Goodwill Industries, but he missed four of ten days because of back pain. During the evaluation, Mr. Walker was unable to remain in one position, even seated, for more than an hour. His evaluator recommended further medical care before the evaluation could be completed. Ex. B-37, Tr. at 268. The report further noted that Mr. Walker's concentration, vitality, and general work performance were compromised by his back pain. Id. at 275-76. Similarly, on October 13, 1983, Mrs. Audrey Jorman of the Division of Vocational Rehabilitation concluded that Mr. Walker was not physically fit to undergo training even for sedentary work. Mrs. Jorman wrote, "[Walker] is not physically able to pursue training for sedentary job task to date, because of severe pain. He needs treatment, not training at this point." Ex. B-42, Tr. at 322.EARLIER PROCEEDINGS
 
 
 18
 In January and February 1983, Mr. Walker filed applications for disability benefits for the period after December 11, 1981. The Social Security Administration denied Mr. Walker the benefits, both on his original application and on reconsideration. Ex. 17, Tr. at 204; Ex. 18, Tr. at 205. On November 17, 1983, an ALJ conducted a hearing to review Mr. Walker's disability claim. After hearing testimony from Mr. Walker and reviewing Mr. Walker's medical and vocational records, the ALJ issued an opinion denying Mr. Walker disability benefits. More specifically, the ALJ found that, although Mr. Walker suffered from a severe back impairment, his condition did not constitute total disability. The ALJ noted that Mr. Walker at least arguably was disabled from January 18, 1983 through June or July 1983 (the period of convalescence following the third operation), but found that Mr. Walker had not proven that he was totally disabled for any continuous twelve-month period. Tr. at 17-18. The ALJ found that Mr. Walker suffered from a severe back impairment, but that nonetheless he retained sufficient "residual functional capacity" to allow him to pursue sedentary work. Tr. at 18-20. To reach his conclusion, the ALJ employed the Medical Vocational Guidelines or "grid" set forth at Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. Secs. 200.00-204.00 (1987).
 
 
 19
 On March 22, 1984, the Appeals Council of the Department of Health and Human Services declined to review the ALJ's decision, thus adopting it as the final decision of the Secretary. Tr. at 4. Mr. Walker then filed this action in federal district court, seeking judicial review of the Secretary's decision.
 
 
 20
 The district judge first referred the case to a United States magistrate, who recommended that the matter be remanded to the Secretary for a new determination regarding the range of jobs which were within Mr. Walker's ability. The magistrate relied on Smith v. Schweiker, 735 F.2d 267 (7th Cir.1984), which held that the grid should not be used where non-exertional impairments, such as chronic pain, prevent the claimant from performing the sort of work indicated. The magistrate found that Mr. Walker's recurrent pain rendered the grid inapplicable to him. Therefore, the magistrate proposed that the matter be remanded to allow the Secretary to take testimony from a vocational expert regarding the work that was available to Mr. Walker. Magistrate's Entry at 12-13.
 
 
 21
 The district judge declined to accept the magistrate's recommendation. Instead, reviewing the evidence de novo, the court awarded Mr. Walker disability benefits for a closed period from December 12, 1981 through July 7, 1983.[2] The judge relied primarily on Dr. Hall's letter of March 15, 1983 in which the Doctor concluded that Mr. Walker had been totally disabled at all times since his original injury. The district judge decided that the ALJ, having found Dr. Hall's opinion generally credible, was bound to accept that opinion on the question of the duration of Mr. Walker's disability. Walker v. Bowen, No. IP 84-842-C, slip op. at 3 (S.D.Ind. Oct. 23, 1986). He then upheld the Secretary's denial of benefits after July 7, 1983, citing the testimony of Dr. Manning. Id. at 3-4.
 
 THE STANDARD OF REVIEW
 
 22
 The Social Security Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Sec. 405(g) (1983). Here, the ALJ's findings stand as those of the Secretary; therefore, the ALJ's opinion on Mr. Walker's disability must be upheld if it is supported by "substantial evidence on the record as a whole." Smith v. Schweiker, 735 F.2d 267, 270 (7th Cir.1984); see also Stephens v. Heckler, 766 F.2d 284, 287-88 (7th Cir.1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir.1984). Neither the district court nor this court may reweigh the evidence. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ). Delgado v. Bowen, 782 F.2d 79, 82-83 (7th Cir.1986); Stephens, 766 F.2d at 287-88. Therefore, the question presented for review is not whether Mr. Walker is disabled, but only whether the ALJ's finding of non-disability is supported by substantial evidence in the record.
 
 MR. WALKER'S APPEAL
 
 23
 The claimant appeals from that portion of the district court's opinion denying him benefits after July 7, 1983. Mr. Walker argues that he is unable to perform even sedentary work sufficiently to allow a finding that he was not disabled after that date, and that the ALJ's decision to the contrary is not supported by substantial evidence. More specifically, he argues that the ALJ erroneously applied the Medical-Vocational Guidelines to his case. Mr. Walker asks that we reverse both the ALJ and the district court and that we find him disabled, or, alternatively, that we remand the matter to the Secretary. However, because we find that the ALJ's opinion was supported by substantial evidence, we must uphold the findings of the Secretary and affirm that portion of the judgment of the district court denying Mr. Walker disability benefits from July 7, 1983 to December 29, 1983.
 
 
 24
 The claimant in a Social Security disability case bears the initial burden of showing that he or she suffers from a "severe impairment" that prevents the claimant from performing his or her past work. The burden then shifts to the Secretary to demonstrate that the claimant retains sufficient "residual functional capacity" to perform other work available in the national economy. Smith, 735 F.2d at 270.[3] The ALJ found that Mr. Walker had a severe back impairment which prevented him from returning to his old job as a dock worker. Tr. at 19. Thus, the burden shifted to the Secretary to show that Mr. Walker could perform jobs that were available in the national economy. At this stage, the ALJ consulted the Medical-Vocational Guidelines, or "grid." According to the grid, a claimant with Mr. Walker's disability, age, education, and work experience is not totally disabled, but is able to perform sedentary work. Mr. Walker, however, argues that the ALJ should not have used the grid because chronic pain and depression render even sedentary work impossible for him.
 
 
 25
 The grid is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience. See Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. Secs. 200.00-204.00 (1987). In 1978, the Secretary promulgated the regulations embodied in the grid to simplify the determination of disability and to improve its consistency. If use of the grid is appropriate, the Secretary may rely upon it in determining disability. In such a case, the grid alone constitutes substantial evidence sufficient to uphold the decision of the Secretary. See, e.g., Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); Cummins v. Schweiker, 670 F.2d 81, 83-84 (7th Cir.1982). However, as Mr. Walker correctly argues, use of the grid may be inappropriate if the claimant suffers from severe non-exertional impairments, including pain, which prevent the claimant from performing the work indicated by the grid. Plaintiff's Br. at 22-26 (citing Campbell, 461 U.S. 458, 103 S.Ct. 1952; Cummins, 670 F.2d 81; Cannon v. Harris, 651 F.2d 513 (7th Cir.1981)). Thus, if non-exertional impairments are severe enough, use of the grid is not appropriate and we will reverse a determination of non-disability based on the grid. Smith, 735 F.2d at 270-72.
 
 
 26
 Mr. Walker correctly portrays the nature of the proposition set forth in Smith, 735 F.2d at 271. Apparently, though, he misperceives its scope. First, the determination whether use of the grid is appropriate is itself a question of fact. Thus, the ALJ's use of the grid will be upheld as long as substantial evidence supports its use. Id. at 270. Second, "[t]he fact that a claimant suffers from a non-exertional impairment does not ... immediately preclude utilization of the grid." Nelson v. Secretary of Health & Human Servs., 770 F.2d 682, 684-85 (7th Cir.1985). Instead, the ALJ must determine whether the claimant's non-exertional impairments are severe enough to limit the abilities of the claimant substantially. To uphold the ALJ's finding that the grids may be used in a given case, we require only "that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir.1986); see also Shidler v. Bowen, 651 F.Supp. 1291, 1298 (N.D.Ind.1987); Johnson v. Bowen, 648 F.Supp. 443, 448-49 (N.D.Ill.1986). Mr. Walker nevertheless contends that the ALJ's findings are not supported by substantial evidence because the ALJ failed to give appropriate weight to much of Mr. Walker's evidence of disability.
 
 
 27
 First, Mr. Walker asserts that the Secretary improperly failed to credit his testimony regarding pain. Mr. Walker alleges that the ALJ applied the wrong legal standard by discounting his testimony solely because it was not fully supported by objective medical evidence. This argument lacks merit for two reasons. First of all, the argument is factually incorrect. The ALJ did not discount Mr. Walker's complaints solely because they were unsupported by medical evidence. The ALJ also found that Mr. Walker's account of his pain was not credible because Mr. Walker's descriptions of the pain during his testimony were not consistent.[4] Tr. at 18. We hardly need mention that determinations of the credibility of witnesses are traditionally reserved to the trier of fact, here the ALJ, who is in the best position to observe the witnesses. Zalewski v. Heckler, 760 F.2d 160, 165-67 (7th Cir.1985); Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir.1984). Secondly, Congress has explicitly determined that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings ... which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. Sec. 423(d)(5)(A) (1986) (emphasis added), as amended by Social Security Disability Benefits Reform Act of 1984, Pub.L. 98-460. Furthermore, we concluded in Nelson, 770 F.2d at 685, that a claim of pain may be discounted if it is not borne out by objective medical evidence. See also Walton v. Secretary of Health & Human Servs., 604 F.Supp. 215, 221 (C.D.Ill.1984). In the case before us, three doctors examined Mr. Walker in July and August 1983 and all three pronounced Mr. Walker fit for sedentary work. Both Dr. Manning and Dr. Bradley specifically noted Mr. Walker's pain, but did not suggest that it would prove disabling. On this record, the ALJ's determination that Mr. Walker's testimony regarding pain lacked credibility was supported by substantial evidence.
 
 
 28
 Second, Mr. Walker attaches great significance to the Secretary's finding that Mr. Walker's "residual functional capacity for the full range of sedentary work is reduced by prolonged walking or standing." Tr. at 19. Mr. Walker views this finding as a virtual admission that the grid should not have been used in his case. Again, however, Mr. Walker asks that Smith be stretched beyond its intended scope. A small incongruity between the grid's work description and the claimant's abilities does not preclude use of the grid. Warmoth, 798 F.2d at 1112; Nelson, 770 F.2d at 684-85. Social Security regulations provide that sedentary work:
 
 
 29
 involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, or small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 30
 20 C.F.R. Sec. 404.1567(a) (1987). The Secretary has interpreted the word "occasionally" to mean that a sedentary job should not require more than a total of two hours of standing or walking in an eight-hour day. Social Security Ruling 83-10, Titles II and XVI: Determining Capability to do Other Work--The Medical-Vocational Rules of Appendix 2 (D.E.1983). Of the medical opinions in this record, only Dr. Bradley's, restricting Mr. Walker to one hour of standing or walking at a time, appears to conflict at all with the requirements of sedentary work. Even Dr. Bradley's opinion would eliminate only the most demanding of sedentary work, however. Thus, the ALJ could reasonably conclude that although Mr. Walker's ability to perform sedentary work was somewhat limited, a substantial majority of sedentary jobs remained available to him.
 
 
 31
 Mr. Walker next argues that the ALJ failed to consider Dr. Martin's conclusion that Mr. Walker suffered from depression related to his back injury. Psychological problems are non-exertional impairments which must be included in the Secretary's evaluation of a claimant's limitations. Ostrowski v. Heckler, 609 F.Supp. 1109, 1114-15 (D.C.Ill.1985). Mr. Walker argues that his psychological impairment, when combined with his physical impairment, renders the ALJ's decision to apply the grid inappropriate. However, as Mr. Walker himself concedes, his depression was not serious. Plaintiff's Br. at 24. In fact, Dr. Martin did not suggest that Mr. Walker's depression would detract significantly from his ability to do sedentary work. Moreover, the ALJ specifically mentioned Dr. Martin's diagnosis in his opinion. Tr. at 17. Thus, we cannot conclude that the ALJ failed to consider Mr. Walker's depression in his analysis of Mr. Walker's non-exertional impairments. On the contrary, the ALJ discussed Mr. Walker's depression along with the other pertinent evidence, but concluded that Mr. Walker was not limited significantly enough to preclude application of the grid. That finding was supported by substantial evidence.
 
 
 32
 In summary, although the record contains evidence that Mr. Walker's back injury is quite serious--possibly serious enough to render him totally disabled--it also contains other evidence, most notably the conclusions of three doctors who examined Mr. Walker in July and August 1983, which supports a finding of "not disabled." The ALJ who decided this case was presented with a difficult decision in the face of conflicting evidence. This court's role is limited to determining whether the decision was supported by substantial evidence. Stephens, 766 F.2d at 288. Here, the ALJ recognized that Mr. Walker suffered from depression and recurrent back pain. He did not deny that Mr. Walker's back injury was serious, nor that Mr. Walker would continue to feel its effects. He merely found that Mr. Walker had failed to establish a disability severe enough to prevent him from performing a substantial number of sedentary jobs. We therefore conclude that the ALJ's decision to apply the grid in this case was supported by substantial evidence. Because we uphold the use of the grid, we also uphold the ultimate decision of the ALJ--that Mr. Walker was not totally disabled after July 7, 1983.
 
 
 33
 Mr. Walker's final argument does not attack the ALJ's opinion on the merits, but rather it criticizes the thoroughness of the opinion's analysis. Mr. Walker asserts that the ALJ neglected to mention either his vocational evaluation report or Mrs. Jorman's letter, both of which unambiguously declare Mr. Walker unfit for sedentary work. Therefore, he argues, the ALJ has fallen short of this court's standard of "minimum articulation" of evidentiary findings. See Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir.1984). However, Mr. Walker reads Zblewski too broadly. We do not require the ALJ to discuss every piece of evidence, but only to articulate his rationale sufficiently to allow meaningful review. We require the ALJ to discuss specific evidence only if that evidence goes uncontradicted. Stephens, 766 F.2d at 287. Here, the ALJ concluded that "the objective medical evidence in this case fails to disclose the existence of a condition which is normally thought to cause the kind of pain necessary to prevent sedentary work activity for a period of at least twelve months." Tr. at 18. The ALJ could rationally rely on medical evidence rather than on the reports of the two non-physicians who concluded that Mr. Walker was unfit for sedentary work during his vocational evaluation. Given the ALJ's explicit reliance on medical evidence, he did not need to go further and discuss why he preferred to rely on that evidence rather than the vocational evidence. Thus, we find that the ALJ's statement of his rationale met our standard of minimal articulation.
 
 THE SECRETARY'S CROSS-APPEAL
 
 34
 The Secretary cross-appeals from the portion of the district judge's decision that awarded benefits to Mr. Walker for the period from December 12, 1981 to July 7, 1983. The Secretary argues that the ALJ's decision to deny benefits for that period was supported by substantial evidence and that the district court improperly substituted his own judgment for that of the ALJ. We agree and therefore reverse the decision of the district court.
 
 
 35
 In reversing the decision of the ALJ, the district court relied on Dr. Hall's letter of March 15, 1983. The district court stated that:
 
 
 36
 The error which the A.L.J. commits is his failure to notice the final statements of Dr. Hall's March 15th report. Dr. Hall concludes his report by stating "I believe that Mr. Walker has not yet reached a quiescent state, consequently an impairment rating cannot be given. He has been totally disabled in my opinion, since his injury on November 5, 1980." (Emphasis added.)
 
 
 37
 The A.L.J.'s discussion of Dr. Hall's report indicates that the A.L.J. found Dr. Hall's opinion credible and establishes a period of disability from January 18, 1983 through June or July, 1983. However, the A.L.J. stated that plaintiff was not entitled to benefits because the period of disability was not for twelve (12) continuous months. The problem with the A.L.J.'s finding is that Dr. Hall's report states that plaintiff's disability began on November 5, 1980, not January 18, 1983. Since the A.L.J. found Dr. Hall's opinion credible, the Court must conclude that Dr. Hall's report establishes Mr. Walker's period of disability from November 5, 1980 through June or July of 1983. Therefore, contrary to the A.L.J.'s decision, the facts establish the plaintiff has been disabled for more than twelve (12) consecutive months.
 
 
 38
 Walker v. Bowen, slip op. at 3. The Secretary argues persuasively that "[t]he district court erroneously selected one statement to override the totality of the evidence," thereby improperly substituting its own judgment for that of the ALJ. We agree.
 
 
 39
 Substantial evidence still supports the ALJ's decision. The ALJ specifically noted, for example, that Dr. Cattell had concluded, on May 10, 1982, that Mr. Walker's back injury amounted only to a twenty percent partial impairment. In addition, the record reveals that Dr. Hall, on April 20, 1982, predicted that Mr. Walker would be ready to return to work by June 1982. Furthermore, Mr. Walker's failure to seek any medical care other than routine physical therapy between March and November 1982 suggests that Mr. Walker encountered no serious difficulties during that period. And, while Mr. Walker's physical therapy notes do reveal that he felt some pain during therapy in July and August 1982, they do not establish that Mr. Walker's pain was disabling. Under these circumstances, the district judge should not have substituted his own interpretation of Dr. Hall's letter for that of the ALJ. The ALJ was entitled to credit part of Dr. Hall's analysis while rejecting other parts which were not, in his view, compatible with the remainder of the record. Indeed, the ALJ cited Dr. Hall's concession, in the March 15, 1983 letter, that Mr. Walker had progressed "fairly well" between his recovery from his second operation and the recurrence of his back problems in November 1982. Tr. at 16. Thus, we cannot join the district judge in concluding that the ALJ was required to accept Dr. Hall's conclusion that Mr. Walker was totally disabled throughout the period from his injury to July 7, 1983.
 
 
 40
 Mr. Walker, however, argues that, in addition to misreading Dr. Hall's March 1983 letter, the ALJ misconstrued the May 1982 diagnosis of Dr. Cattell. The ALJ interpreted Dr. Cattell's comments as concluding that "claimant did not need pain medication." Tr. at 16. At another point, the ALJ states that Dr. Cattell concluded that Mr. Walker did not need a strong or narcotic medication for relief of pain. Tr. at 18. Mr. Walker correctly points out that Dr. Cattell actually stated that Mr. Walker should change medications because the Tylenol # 3 that Mr. Walker then was taking was potentially addictive. Although the ALJ could have been more precise in his reading of Dr. Cattell's diagnosis, we are not convinced that any error[5] requires rejection of his entire opinion. "The court review judgments, not opinions." Stephens, 766 F.2d at 287. Although the ALJ possibly misinterpreted one aspect of Dr. Cattell's diagnosis, his judgment remains supported by substantial evidence.
 
 
 41
 Finally, Mr. Walker argues that the ALJ erred in giving too little credence to the opinion of Dr. Hall, the treating physician. Plaintiff's Reply Br. at 4-7. As Mr. Walker correctly asserts, treating physicians enjoy the advantages of long-term and first-hand observation. Stephens, 766 F.2d at 288; Allen v. Weinberger, 552 F.2d 781 (7th Cir.1977). However, this court has never held that the treating physician's conclusions always must outweigh those of consulting physicians. In fact, we have recognized that consulting physicians may sometimes offer conclusions more credible than those of the treating physician.
 
 
 42
 The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise.
 
 
 43
 Stephens, 766 F.2d at 289 (citation omitted). The ALJ must decide how to weigh these competing considerations. Id. We cannot conclude that he did so incorrectly in the case before us.
 
 CONCLUSION
 
 44
 When an ALJ decides a Social Security disability case, he or she necessarily must translate voluminous and often conflicting evidence into a simple finding of "disabled" or "not disabled." We examine the findings of the ALJ only to confirm that they are supported by substantial evidence. See 42 U.S.C. Sec. 405(g); Stephens, 766 F.2d at 286-88. Here, we find that the decision of the ALJ remains supported by substantial evidence. That portion of the district court's judgment that overruled the ALJ and awarded Mr. Walker benefits for the period from December 12, 1982 to July 7, 1983 is reversed. That portion of the district court's judgment which upheld the ALJ in denying benefits after July 7, 1983 is affirmed.
 
 REVERSED IN PART
 
 45
 AFFIRMED IN PART.
 
 
 
 *
 The Honorable Robert A. Grant, United States Senior District Judge, sitting by designation
 
 
 [1]
 Dr. Hall erroneously stated the date of Mr. Walker's injury as November 5, 1980, rather than October 14, 1980, but the error is irrelevant for our purposes
 
 
 [2]
 The district court's opinion does not state clearly whether its de novo review was directed to the opinion of the magistrate or that of the ALJ. We assume the former. Under the Federal Magistrates Act, the district court may review all findings of the magistrate de novo and must exercise de novo review with regard to findings which raise objections from the parties. 28 U.S.C. Sec. 636(b)(1)(C) (1986); Delgado v. Bowen, 782 F.2d 79, 81-82 (7th Cir.1986). The findings of the ALJ, on the other hand, must be upheld if supported by substantial evidence. Delgado, 782 F.2d at 82-83
 
 
 [3]
 The Secretary actually employs a five-step test to determine disability. 20 C.F.R. Secs. 404.1520, 416.920 (1987). The first four steps allow some claimants to be classified "disabled" or "not disabled" based on medical or work history alone. 20 C.F.R. Secs. 404.1520(b)-(e), 416.920(b)-(e) (1987). The fifth step, used to classify the remainder, was stated by the ALJ as follows: "If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 CFR 404.1520(f) and 416.920(f))." Tr. at 15. The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act. See 22 A.L.R.3d 444 (1968 and Supp.1987)
 
 
 [4]
 Mr. Walker argues that the ALJ erred in labeling his descriptions of pain inconsistent. Plaintiff's Reply Br. at 10-11. As Mr. Walker points out, the supposedly inconsistent statements each find considerable support in the record. At first, Mr. Walker reported pain mainly in his left leg. Then, in November 1982, Mr. Walker told Dr. Hall that he felt pain in his right leg. However, the record also reveals that the variant descriptions each referred to Mr. Walker's pain at the time of his hearing before the ALJ. Tr. at 39-40. Therefore, the ALJ could find that the statements were inconsistent
 
 
 [5]
 The ALJ's statements may be read as concluding that Dr. Cattell believed that Mr. Walker's pain was not so severe as to warrant the use of a drug which presented, with its benefits, the danger of addiction