Richard **CHAMBERS**, Plaintiff,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant.

No. 87 C 0622.

United States District Court, N.D. Illinois, E.D.

Jan. 14, 1988.

Seymour Velk, Chicago, Ill., for plaintiff.

Ann Wallace, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

HOLDERMAN, District Judge:

On January 23, 1987 Richard Chambers filed this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Secretary of Health and Human Services's ("Secretary") denial of Mr. Chambers' application for disability insurance and Supplemental Social Security ("SSI") benefits. Before the court are the parties' cross-motions for summary judgment.

## STATEMENT OF FACTS

Plaintiff, Mr. Chambers, was born in August 1946. A September 1983 lumbar myelogram and electromyogram (examinations regarding plaintiff's alleged spinal difficulties) proved inconclusive. On October 17, 1983 Mr. Chambers injured his back at work. A December 1983 axial tomography scan revealed a bulging disc at L4 and L5 and a very tight neuroforamina at L5–S1. In January 1984 Dr. Sinha of St. Mary's Hospital diagnosed Mr. Chambers as having (1) spinal stenosis at L5 and S1 and (2) a herniated lumbar disc at L4–5 on the right side. At that time Mr. Chambers was 5 foot 8 inches tall and weighed 245 pounds.

In January 1984 Dr. Sinha performed surgery on Mr. Chambers, excising one disc and reshaping another. When Mr. Chambers left the hospital, he was ambulating well and suffered dramatically less pain than before his operation. Dr. Sinha restricted Mr. Chambers from performing heavy work and instructed him to lose weight.

In October 1984 Mr. Chambers fell down some stairs. He reported to Dr. Sinha that prior to his fall he had felt increased pain in the lower lumbar area. Upon examination, Dr. Sinha found no neurological deficit.

In December 1984 Dr. Sinha performed a posterolateral fusion of L4, L5 and L5, S1 with bone graft. Dr. Sinha reported that on January 2, 1985, when Mr. Chambers left the hospital, he was ambulating very well with no referred pain in the leg or any neurological deficit.

In April 1985 Dr. MacDonald diagnosed Mr. Chambers as having (1) acute lower back and posterior pelvis injuries and (2) damage to discs at L4–L5 and L5–S1. Dr. MacDonald reported some sensory loss in the right leg and some motor impairment in the back, right hip, knee and ankle.

In December 1985 Dr. Sinha diagnosed Mr. Chambers as having discogenic degenerative disease of the lumbo-sacral spine. Dr. Sinha noted that Mr. Chambers complained of pain in his lower back and legs and that only an extreme degree of motion caused Mr. Chambers pain in the lumbo-sacral spine. Dr. Sinha restricted Mr. Chambers from performing heavy manual work and stated that Mr. Chambers' condition allowed him to do moderate physical activity.

In January 1986 Dr. Elwood examined Mr. Chambers, who complained of lumbar discomfort and leg pain. Dr. Elwood stated that Mr. Chambers' symptoms suggested some chronic radiculopathy, consistent with degenerative lumbar disc disease.

On April 22, 1986 Dr. Nuberg examined Mr. Chambers. Dr. Nuberg stated that

Mr. Chambers would be most helped by weight loss. Dr. Nuberg noted that (1) Mr. Chambers' deep tendon reflexes were negligible in the right ankle; (2) Mr. Chambers had pain at 60 degrees forward flexion and 15 degrees extension; (3) Mr. Chambers could toe walk and heel walk without much difficulty.

On June 1, 1986 Dr. Sinha again examined Mr. Chambers. Dr. Sinha reported that (1) Mr. Chambers' lateral flexion/rotation was fairly good; (2) his reflexes and sensory abilities were "ok;" and (3) he continued to experience pain. Dr. Sinha stated again that Mr. Chambers could not perform heavy manual work. Dr. Sinha gave Mr. Chambers two epidural Cortisone injections and put him in a body jacket. Mr. Chambers again complained of back and (referred) right leg pain.

Mr. Chambers testified that his legs become numb after sitting. He can only walk a few blocks and wears a body cast. He helps his wife with the dishes, cooking and laundry. He drives approximately 50 miles a week. He can attend to his own personal needs but needs help getting out of the bathtub and with his shoes. Sometimes he can lift 20–30 pounds; other times he cannot, without pain, lift nine pounds. He can play baseball with his kids, but must throw the ball underhanded. He can mow the lawn for about ten minutes.

On January 17, 1986 Mr. Chambers applied for disability insurance benefits and supplemental security income. Mr. Chambers' claim was denied initially and upon reconsideration.

On June 12, 1986 ALJ Nelson held a hearing. ALJ Nelson held that Mr. Chambers was not disabled. On November 19, 1986 the Appeals Council declined review, thereby causing ALJ Nelson's decision to become final.

## DISCUSSION

The Secretary uses a five-step procedure to determine whether a claimant is entitled to disability benefits. The Secretary asks: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy?

An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. *Bauzo v. Bowen*, 803 F.2d 917, 920 n. 1 (7th Cir. 1986); *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985); 20 C.F.R. § 404.1520.

This court must uphold ALJ Nelson's findings if they are supported by substantial evidence in the record as a whole. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir.1984). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, this court must affirm the Secretary's decision. *Delgado v. Bowen*, 782 F.2d 79, 82–3 (7th Cir.1986).

ALJ Nelson determined that Mr. Chambers did not have an impairment that met or exceeded one of those listed in Appendix 1. *See* Appendix 1, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 1.00–13.00 (1987).

ALJ Nelson then found that, although Mr. Chambers could not perform his past relevant work as a truck driver and as a grain elevator laborer, Mr. Chambers could perform sedentary work. ALJ Nelson therefore used the "grid" to find that Mr. Chambers was not disabled. *See* Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 200.00–204.00 (1987).

Mr. Chambers challenges ALJ Nelson's determination that: (1) Mr. Chambers' condition does not meet or exceed the impairments listed in Appendix 1 and (2) Mr. Chambers could perform sedentary work and, therefore, ALJ Nelson could rely upon the grid to determine the issue of Mr. Chambers' disability.

### 1. *Listed Impairments*

Mr. Chambers argues that the ALJ's finding that Mr. Chambers' condition does

not meet that listed in Section 1.05(C) is not supported by substantial evidence. This court does not agree.

Section 1.05(C) covers vertebrogenic disorders that are accompanied by (1) pain, muscle spasm and significant limitation of motion in the spine and (2) radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. These symptoms must persist over three months despite prescribed therapy. They must also be expected to last twelve months.

There is not substantial evidence that Mr. Chambers persistently experienced (1) significant limitation of motion; (2) muscle spasm; (3) muscle weakness; and (4) sensory and reflex loss. Medical records at most show that (1) on two dates Mr. Chambers displayed muscle spasm (Tr. pp. 133, 176) and (2) on two dates Mr. Chambers displayed sensory loss (Tr. pp. 148, 176). There was no evidence of muscle weakness and only conflicting evidence of reflex loss.

■This court concludes that ALJ Nelson's decision as to listing 1.05(C) is supported by substantial evidence.

### 2. *Residual Functional Capacity*

Mr. Chambers argues that the ALJ's finding that Mr. Chambers can perform sedentary work is not supported by substantial evidence, and that, therefore ALJ Nelson erred in relying on the grid to determine that Mr. Chambers was disabled. Specifically, Mr. Chambers argues that his pain prevents him from performing sedentary work. This court does not agree.

The grid classifies a claimant as disabled or not disabled based on his physical capacity, age, education and work experience. If use of the grid is appropriate, the Secretary may rely upon it in determining disability and the grid itself constitutes substantial evidence for the Secretary's decision. *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987). But use of the grid is inappropriate if the claimant suffers from severe non-exertional impairments, such as pain, which prevent the claimant from performing the work indicated by the grid. *Ibid.*

In this case, to uphold the ALJ's finding that the grid may be used, "there must be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Ibid.* at 641. Dr. Sinha's opinion, based on his history of treating Mr. Chambers, that Mr. Chambers' condition precludes only "heavy manual work" constitutes just such "reliable evidence." Mr. Chambers nonetheless argues that ALJ Nelson actually credited his testimony about pain and therefore could not properly find that Mr. Chambers' pain did not significantly limit his ability to perform sedentary work.

ALJ Nelson made two findings as to Mr. Chambers' credibility: first, that "[b]ecause of the inconsistency between the claimant's alleged disability and his stated activities, the claimant's testimony is ... somewhat less than credible" and second, that "the claimant's testimony with respect to the severity and extent of his illness is credible and supported by medical evidence."

ALJ Nelson's first statement seems to discredit Mr. Chambers' testimony as to the limiting effect of his illness. ALJ Nelson's second statement seems to credit Mr. Chambers' testimony as to the illness itself. Mr. Chambers argues that it is unclear whether ALJ Nelson credited Mr. Chambers' statements about pain: whether ALJ Nelson considered pain to be included within the term "alleged disability" or within the phrase "the severity and extent of his illness."

■ This court agrees that ALJ Nelson's statements about Mr. Chambers' credibility are not very clear. But this court concludes that, by stating that Mr. Chambers' claim of disability was inconsistent with his daily activities, ALJ Nelson rejected Mr. Chambers' statements about the effect of his pain.

■ Determinations of credibility are reserved to the ALJ, who is in the best position to observe. *Zalewski v. Heckler,* 760

F.2d 160, 165–7 (7th Cir.1985). Moreover, this court (and the ALJ) may discount a claim of pain if it is not borne out by objective medical evidence. Dr. Sinha examined Mr. Chambers in June 1986 and restricted him only from heavy manual work. Dr. Sinha specifically noted Mr. Chambers' pain, but did not suggest that it would prove disabling. *See Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir.1987). No examining or treating doctor provided a contrary opinion. On this record, ALJ Nelson's finding that Mr. Chambers could perform sedentary work—and therefore ALJ Nelson's decision to rely on the grid—is supported by substantial evidence.

For the foregoing reasons, this court affirms ALJ Nelson's decision denying Mr. Chambers' claim for disability benefits.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.