914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dorsey JONES, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Defendant-Appellee.
 No. 89-2341.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1990.
Decided Sept. 25, 1990.
Rehearing and Rehearing En Banc Denied Nov. 2, 1990.
 
 Before WOOD, JR., CUDAHY, and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Dorsey Jones appeals the district court's grant of summary judgment affirming an administrative law judge's denial of his application for Supplemental Security Income benefits pursuant to sections 1602 and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. Secs. 1382 and 1382c. We affirm.
 
 I.
 
 2
 Jones is a fifty-nine year-old former cab driver who suffers from heart problems, herniated disks and a mild dysthymic disorder ("depression"). Jones complains of blackout spells and dizziness, although these complaints are not supported by objective evidence in the medical record. A number of physicians examined Jones and provided reports concerning his medical problems, and as many times happens, some of the physicians' conclusions were in conflict. The record reflects that some level of cardiac impairment is present, but the degree to which it limits Jones' physical activity is disputed. Jones has two herniated disks in his back, but his own doctors were of the opinion that the disk problem should not prevent him from performing his job as a parking lot cashier. The evidence of the dysthymic disorder was based on Jones' own description of past events rather than any present observations by the examining psychologist. Jones' allegations of blackouts and dizziness were unsupported by any objective medical evidence.
 
 
 3
 Jones drove taxicabs for a number of Chicago cab companies between 1971 and 1977. Jones testified that he lost this last taxi driving job in 1977 when a blackout while driving allegedly resulted in an accident, and thereafter he was uninsurable for cab driving purposes.
 
 
 4
 For three to four months during 1979 and 1980, Jones worked as a parking lot cashier in Chicago, requiring that he sit in a booth, hand out tickets, operate a cash register, receive payments, and make out reports. Jones' vocational report claimed that the job required him to sit eight hours per day, while Jones' testimony revealed that the job involved moving around the cashier's booth.[1] Jones testified that he was terminated from his parking lot cashier job after he passed out. His employer gave as a reason they "needed somebody they could depend on."
 
 
 5
 Jones' current activities include occasional preaching at a Baptist church, cooking some of his own meals, occasionally washing dishes, exercising his legs and arms, reading and watching television. Medical reports from 1984 reflected that Jones told physicians on two separate occasions that he could walk eight or ten blocks before becoming winded.
 
 
 6
 After the initial denial of his application for benefits, Jones requested and was granted a hearing before an Administrative Law Judge. Jones offered the only oral testimony provided at the hearing and introduced evidence from his treating physicians, the evidence introduced included reports from physicians who reviewed the information on behalf of the Secretary. The ALJ found that there were limitations on Jones' physical activity as a result of his medical problems, but the objective medical record failed to support his disability claims. The ALJ also found that Jones had been performing his parking lot attendant job "long enough to learn it," thus, it fit the classification guidelines as past relevant work for purposes of the disability determination. Further, Jones retained the residual functional capacity to perform light exertional tasks, was able to return to his past work as a parking lot cashier, and thus was not eligible for Supplemental Security Income benefits.
 
 
 7
 Jones requested, and was denied, a review by the Office of Hearings and Appeals, and the ALJ's decision became the final decision of the Secretary of Health and Human Services. Jones sought judicial review of the Secretary's decision. The district court judge referred the parties' cross-motions for summary judgment to the U.S. Magistrate, who recommended granting the Secretary's motion. The judge accepted this recommendation and Jones appealed.
 
 II.
 
 8
 Jones claims that the ALJ erred in finding that his back impairment, his cardiac problems or the combination of his impairments did not render him disabled. Jones argues that his back impairment alone should qualify him for benefits, that his cardiac problems exacerbate this disabling condition, and the combination of these impairments renders him disabled.
 
 
 9
 Jones applied for Supplemental Security Income benefits ("SSI") under 42 U.S.C. Sec. 1382. For the purposes of SSI, Jones will be considered disabled if he is unable to engage in any substantial gainful activity or in his previous relevant work. See 42 U.S.C. Secs. 1382c(a)(3)(A) and (B). The ALJ's findings of fact will be given deference. We will not reweigh the evidence, and will overturn his decision only if not supported by substantial evidence. Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1989).
 
 
 10
 As to Jones' back impairment, substantial evidence clearly supported the ALJ's conclusion that it is not of disabling severity. Jones' treating orthopaedic physician reported that Jones had approximately two-thirds of normal forward flexion, and his lateral bending and twisting were seventy-five percent of normal. Jones definitely had muscle weakness, but maintained a full range of motion in his extremities. His reflexes were reduced, but he maintained his sensation to light touch, and other motor and sensory functions were normal. His doctor restricted Jones to light work, requiring him not to lift over twenty pounds, not to bend repeatedly nor to walk or stand for longer than four hours at any given time. Based upon his doctor's opinion, the ALJ found that Jones' spine disorder did not meet the requirements of motion limitation or motor loss as set forth in the Social Security Regulations.[2]
 
 
 11
 Jones complains of shortness of breath, chest pain, dizziness and blackouts, which he attributes to cardiac disease and hypertension. He testified that the chest pain increases as a result of physical stress. Medical records show that Jones suffered a mild heart attack in November of 1985 and made a speedy uneventful recovery. A 1984 stress test produced no chest pain. When Jones suffers his infrequent chest pains, they are usually resolved in a few minutes with rest or nitroglycerin tablets. Jones' statements regarding the amount of activity which he could perform and the amount of activity which brings on chest pains are inconsistent, according to the ALJ, and therefore were discounted. We are of the opinion that, based upon the medical evidence, there was substantial evidence in the record for the ALJ to conclude that Jones was not disabled as a result of his cardiac impairments.
 
 
 12
 Jones claims that his psychological disorder prevents him from returning to his past work as a parking lot cashier. A psychologist stated that Jones suffered from a mild dysthymic disorder, but there was a conflicting medical report in the record, based upon another psychologist's review of the medical records, reflecting that Jones in fact did not suffer from a medically determinable mental impairment. The ALJ found that Jones did have a mild dysthymic disorder, but that it had no significant impact on his ability to perform work.
 
 
 13
 Jones alleges that, even if none of his individual impairments, when considered in isolation, are deemed disabling, the ALJ should have considered the combined effect of all of his impairments in making his findings. The second finding of the ALJ, however, specifically addresses the fact that no combination of impairments renders Jones disabled.
 
 
 14
 Finally, Jones challenges the ALJ's consideration of his past work as a parking lot cashier as "past relevant work," the requirements of which are to be considered in evaluating whether Jones retained the residual functional capacity to perform his past job. The Social Security regulations, at 20 C.F.R. Sec. 416.965(a) support the government's position that work done for only a few months can apply as "past relevant work," because "past relevant work" is work which has "lasted long enough for [the claimant] to learn to do it." Based upon the relatively simple demands of the job, and Jones' clear understanding of those demands, as evidenced by his testimony at the hearing, the ALJ found that Jones had learned to do that job, and that it was thus past relevant work. This finding was supported by substantial evidence.[3]
 
 III.
 
 15
 Based upon his treating physician's opinion regarding Jones' alleged physical limitations, the recent stress test reflecting that Jones' heart ailment should not prevent him from performing moderate physical activity, the fact that his chest pains receded with rest or nitroglycerin tablets, and the lack of medical evidence to support Jones' complaints of dizziness and blackouts, and the rejection of the disabling effect of the mental disorder, the ALJ concluded that Jones retained the capacity to perform his past job. Neither the Dictionary of Occupational Titles, nor the evidence received at the hearing reveal that any activity beyond Jones' physical capabilities is required by the cashier job. The ALJ's findings are supported with substantial evidence in the record to support his conclusion that Jones retained the residual functional capacity to perform his past relevant work as a parking lot cashier. The order granting summary judgment in favor of the Secretary is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 At oral argument, Jones' attorney contradicted Jones' earlier representations and argued for the first time that the job required Jones to bend frequently. The administrative record provided no evidence that a parking lot attendant is required to bend. After oral argument the Secretary submitted, as a statement of supplemental authority pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure and Seventh Circuit Rule 28(i), a description of the physical demands of the cashier's job which is contained in The Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, Dept. of Labor (1981). The cashier job is described as sedentary work requiring handling of light items, talking and/or hearing, as well as seeing. Id. at 225. There is no evidence in the record to support the claim that the cashier's job requires bending
 
 
 [2]
 20 C.F.R., part 404, subpart (p), Appendix 1, Listing 1.05(c) describes the requirements for a disabling back impairment as follows:
 "C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 [1]
 Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 [2]
 Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."
 
 
 [3]
 Jones also contends that his three to four month tenure as a parking lot cashier should be considered "trial work" and thus not relevant to disability determinations. However, the statute creating the concept of trial work, 42 U.S.C. Sec. 422(c), by its own terms, only applies to work that begins "with the month in which ... [the claimant] becomes entitled to disability insurance benefits...." Since Jones had not yet begun receiving disability benefits, the trial work concept is inapplicable to the present case