958 F.2d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles DURANTY, Plaintiff/Appellant,
v.
Louis W. SULLIVAN, Secretary of the Department of Health &
Human Services, Defendant/Appellee.
 No. 91-2900.
 United States Court of Appeals, Seventh Circuit.
 Argued March 3, 1992.*
Decided March 26, 1992.
 
 Before BAUER, Chief Judge, MANION, Circuit Judge, and JESSE E. ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Petitioner Charles Duranty was a superintendent of plant security at General Motors. On August 16, 1988 he applied for Social Security disability benefits, claiming an onset date of October 30, 1986. After a hearing, an ALJ determined that Duranty was disabled due to musculoskeletal impairments and resulting pain from October 20, 1986 through February 28, 1989, but that by March 1989 there was an improvement in the impairments such that he could perform sedentary work.
 
 
 2
 Although the ALJ determined that Duranty could not return to his particular job at General Motors because it involved more than just sedentary work, after consulting the Dictionary of Occupational Titles, the ALJ determined that Duranty could perform that job as generally performed in the national economy. Duranty challenged the decision in district court, contending that he continued to be disabled after February 28, 1989. The district court affirmed the decision of the ALJ and Duranty appeals. We affirm.
 
 Medical Evidence
 
 3
 On October 30, 1986, Duranty discovered that he could not walk due to acute right leg pain with numbness and tingling. Although it subsided, he began to experience pain and weakness in his right arm and fingertips. On February 2, 1987 he was hospitalized and underwent a right L3-L4 hemilaminectomy, L3-L4 foraminotmy, L3-L4 microdiscectomy and spinal canal reconstruction. The post-operative diagnosis by Dr. Luis Yarzagaray, Duranty's physician, was right L4 radiculopathy secondary to lumbar spondylosis.
 
 
 4
 On September 3, 1987, Duranty was seen by Dr. Joseph P. Cascino, a neurological consultant, pursuant to a request by the Illinois Disability Determination Services. Duranty reported that since his surgery, his right leg strength had improved and his lower extremity pain was reduced, although still present. He was no longer walking with a cane, as he was prior to the surgery. However, Dr. Cascino noted that Duranty had a marked limp of the lower extremity, stiffness of the right knee and very little flexion of extension of the right knee when walking, and no ulnar reflex. He concluded that although the laminectomy was successful, Duranty revealed the effects of a suspect disc at C6-C7. He concluded that Duranty suffered from a general arthritic problem.
 
 
 5
 On February 8, 1988, Duranty was again hospitalized and underwent a right C6-C7 keyhole foraminotmy and C6-C7 microdiscectomy. Dr. Yarzagaray's post-operative diagnosis was a herniated disc at C6-7 on the right.
 
 
 6
 In September 1988, Duranty again saw Dr. Yarzagaray and complained of progressively worsening neck pain and crepitation and muscle atrophy in his right arm. A cervical spine X-ray revealed degenerative arthritic changes, most prominently at C5-6. An EMG and nerve conduction studies revealed mild to moderate C5-C7 radiculopathy on the left and moderate chronic C6-C7 radiculopathy on the right.
 
 
 7
 Dr. Yarzagaray saw Duranty again on January 17, 1989[1] and reported that Duranty continued to suffer from severe nucleus pulposus (ruptured disc) spinal stenosis (overgrowth of back nerves with arthritic tissue) and had not improved since early 1987. A CT scan performed on January 21, 1989 revealed no significant spinal stenosis of the central spinal canal and no ruptured disc in the cervical spine. However, it did reveal some degenerative bony hypertrophy due to degenerative joint disease.
 
 
 8
 On February 28, 1989, a consultative examination was performed by Dr. Eric Kelley, an internist, at the request of the Social Security Disability Administration. Dr. Kelley reported that Duranty had good muscular strength and range of motion, no evidence of sensory neuropathy, and he was able to walk 50 feet without difficulty. His hand grasps were normal. Duranty described a grating-type sensation when he moved his head, upper extremity pain and weakness and an aching in his midline lower back. He stated that he was unable to lift more than 15-20 pounds.
 
 
 9
 An X-ray performed on February 28, 1989 revealed mild degenerative disc changes at the C5-C6 level, with disc space narrowing and ostephyte formation, and moderately severe degenerative disc changes at the L5-S1 level with disc space narrowing and osteophyte formation.
 
 
 10
 On July 12, 1989 Dr. Yarzagaray filled out a disability questionnaire, opining that Duranty suffers severe pain consistent with the diagnoses and objective findings and is incapable of sedentary work. Dr. Yarzagaray saw Duranty again on October 10, 1989 and Duranty reported pain in both arms and the right occipital region. Dr. Yarzagaray stated that he believed Duranty has chronic myofascitis and arthritis and should be considered totally disabled.
 
 Analysis
 
 11
 The decision of the ALJ must be upheld if it is supported by substantial evidence on the record as a whole and has a reasonable basis in the law. Walker v. Bowen, 834 F.2d 635, 639 (7th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pitts v. Sullivan, 923 F.2d 561, 564 (7th Cir.1991) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
 
 
 12
 Duranty contends that (1) there was not substantial evidence to support a finding of medical improvement in his condition enabling him to return to his past relevant work; (2) the ALJ did not give proper weight to his treating physician's opinion; and (3) the ALJ did not properly evaluate his complaints of disabling pain.
 
 Medical Improvement
 
 13
 The ALJ may find that a disability has ceased where there is substantial evidence demonstrating 1) medical improvement in the individual's impairment or combination of impairments which is related to the ability to work, and 2) that the individual is now capable of performing substantial gainful activity. 42 U.S.C. § 423(f)(1). Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings." 20 C.F.R. § 404.1594(c)(1).
 
 
 14
 The ALJ's determination that Duranty's condition had improved and that he was capable of past relevant work, which is considered sedentary as performed in the national economy is supported by substantial evidence. Sedentary work requires that a claimant be able to 1) sit up; 2) do occasional lifting of objects weighing up to 10 pounds; and 3) occasionally walk or stand. Kapusta v. Sullivan, 900 F.2d 94, 96 (7th Cir.1989); 20 C.F.R. § 404.1567(a) (1991).
 
 
 15
 At the consultative examination performed by Dr. Kelley on February 28, 1989, Dr. Kelley documented general improvement in Duranty's condition related to the ability to perform sedentary work. Muscle strength, tone and volume were normal, hand grasps were normal, Duranty walked 50 feet without a cane and stated he could lift 10 pounds.
 
 
 16
 Furthermore, the record as a whole supports the finding that by March 1989 there had been overall improvement in Duranty's medical condition since October 1987 related to his ability to perform sedentary work. Before his first surgery, Duranty had extreme difficulty walking. After his first surgery, Duranty walked with a marked limp. By February 1989, no limp was noted and he was able to walk a short way without difficulty. At the time of the second surgery, his physical examination showed muscle weakness and wasting. At the February 1989 examination, muscle strength tone and volume was normal, and Duranty stated that he could lift 10 pounds. His second surgery was apparently a success as there was no evidence of a herniated disc on the January 1989 CT scan.
 
 
 17
 At the hearing, Duranty testified that he can walk well without a cane if he walks slowly, that he dresses himself, is able to care for his personal needs, and can sit for an hour and a half; then he needs to move. He does chores around the house, gardens, and occasionally goes grocery shopping, and can lift his 15 pound baby granddaughter and hold her for 5 minutes.
 
 
 18
 This evidence supports the ALJ's conclusion that Duranty had the residual capacity to perform basic work activities as shown by his ability to lift up to 10 pounds, to occasionally walk and stand and to sit six hours of an eight hour day.
 
 Physician's Opinion
 
 19
 Duranty contends that the ALJ did not accord sufficient weight to the opinion of his treating physician Dr. Yarzagaray that he was permanently disabled. The ALJ declined to accord extra weight to Dr. Yarzagaray's opinion because he concluded that it was based on Duranty's subjective complaints of pain and not objective medical evidence. Further, the ALJ found that Dr. Yarzagaray's January 1989 diagnosis of "severe nucleus pulposus spinal stenosis" was inconsistent with a CT scan performed shortly thereafter, and noted that at Dr. Yarzagaray's October 1989 examination, the neurological and motor examinations were normal.
 
 
 20
 This court has never held that the treating physician's conclusions must outweigh those of a consulting physician even though the treating physician has the advantage of long-term first-hand observation. The court has recognized that consulting physicians at times offer conclusions more credible than a treating physician, Walker v. Bowen, 834 F.2d 635, 644 (7th Cir.1987), and that treating physicians may go an extra step in helping their patients obtain benefits, DeFrancesco v. Bowen, 867 F.2d 1040, 1043 (7th Cir.1989). The ALJ must weigh these competing considerations. The ALJ may discount the report of a treating physician where it conflicts with clinical and laboratory tests. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir.1987).
 
 
 21
 The record indicates the the ALJ properly considered Dr. Yarzagaray's opinion that Duranty was disabled and found it unsupported by the objective medical evidence. Dr. Yarzagaray's reports themselves evidence medical improvement since the first surgery in 1987, and his diagnosis of severe nucleus pulposis spinal stenosis was in conflict with a CT scan. The ALJ was entitled to accord greater weight to Dr. Kelley's examination.
 
 Pain Testimony
 
 22
 Finally, Duranty contends that the ALJ improperly evaluated his complaints of pain, which he contends were supported by objective medical evidence. A claimant can prove a disability based on subjective complaints of pain if he demonstrates 1) objective evidence of an abnormality; and either a) objective medical evidence supporting the level of pain, or b) the abnormality is of a nature in which it is reasonable to conclude that subjective complaints would result. Veal v. Bowen, 833 F.2d 693, 698 (7th Cir.1987).
 
 
 23
 The ALJ determined that Duranty's subjective claims of pain were not credible after March 1989 based on Duranty's testimony that he sees his physician only on an "as needed" basis, that he can walk without a cane, lift up to 15 pounds and perform most daily and social activities. In addition, the ALJ noted the lack of objective medical findings concerning Duranty's musculoskeletel impairments after 1989.
 
 
 24
 Duranty points to abnormalities on his September 1988 EMG, his January 19, 1989 CT scan and February 1989 cervical spine X-ray. Although these tests revealed degenerative arthritic changes which could cause some level of pain, they also ruled out conditions which could produce disabling pain, including a herniated disc and severe nucleus pulposus stenosis. The tests support the ALJ's conclusion that the two surgeries were successful in eliminating the sources of Duranty's disabling pain, and that by March 1989 the objective medical evidence no longer supported his claims of disabling pain.
 
 Conclusion
 
 25
 Because the decision of the ALJ is supported by substantial evidence, we AFFIRM.
 
 
 
 [1]
 This visit was documented by a telephonic report to the Social Security Disability Administration on January 23, 1991