958 F.2d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Trinidad J. MARTINEZ, Petitioner,
v.
U.S. RAILROAD RETIREMENT BOARD, Respondent.
 No. 90-2467.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 18, 1992.*
Decided March 26, 1992.
 
 Before BAUER, Chief Judge, and COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Trinidad Martinez requests review of the Railroad Retirement Board's (the "RRB") decision denying him disability benefits under the Railroad Retirement Act. 45 U.S.C. § 231(a)(1)(V). We affirm the decision on the ground that it is supported by substantial evidence and has a reasonable basis in law.
 
 BACKGROUND
 
 2
 Martinez worked for the Santa Fe Railroad operating heavy machinery from June 1974 to October 1984. He suffered a back injury on the job in October 1984 and as a result had a partial hemilaminectomy performed in December 1984. He returned to work until August 31, 1985, but performed lighter duties. The record does not indicate why Martinez ceased working for the railroad on August 31, 1985. On April 19, 1986, Martinez reinjured his back when the roof of his house fell on him during a tornado.
 
 
 3
 On January 29, 1987 Martinez applied for an employee disability annuity under the Railroad Retirement Act, claiming an onset date of April 19, 1986. The Bureau of Retirement Claims (the "Bureau") denied his application on May 21, 1987 and affirmed that denial on September 21, 1987.
 
 
 4
 Martinez appealed the decision of the Bureau and an Appeals Referee (the "Referee") sustained the Bureau's decision, and further found that although Martinez was unable to perform his past relevant work, he was capable of performing other sedentary work which exists in significant numbers in the regional and national economy. Martinez appealed this decision to the RRB, which then directed the Referee to have an orthopedic evaluation performed. On June 18, 1990, after reviewing the results of this evaluation, the RRB affirmed and adopted the Referee's decision denying disability benefits.
 
 MEDICAL EVIDENCE
 
 5
 Martinez was treated by Dr. L.S. Holloway from May through August of 1986. Dr. Holloway noted that after the hemilaminectomy, Martinez stated that he had been doing relatively well until the accident involving the roof. At each of the four visits, Dr. Holloway noted that Martinez complained of pain in his back. On Martinez' first visit, Dr. Holloway noted that Martinez was able to walk on his heels and toes without difficulty, that straight leg raises were negative, both in sitting and recumbent position, and that reflexes were bilateral and equal.
 
 
 6
 X-rays showed a very narrowed L5/S1 posteriorly, which Dr. Holloway suspected was the area of the laminectomy. Martinez opted for conservative treatment with anti-inflammatory medications as opposed to strenuous evaluation. On Martinez' last visit, August 5, 1986, Dr. Holloway noted improvement in his condition and stated that
 
 
 7
 "He questioned me today about helping him get disability. I encouraged him that I see no reason for him to consider disability at this time. What I would really like to see him do is to continue his activities and continue improvement and perhaps return to work."
 
 
 8
 On January 8, 1987, Martinez saw Dr. Richard Pratt, a neurologist. Dr. Pratt noted no abnormalities during the examination. He concluded that Martinez may have a soft-tissue inflammation and suggested muscle relaxants and an exercise regimen.
 
 
 9
 On June 29, 1987, Martinez saw Dr. Robert LeGrand, also a neurologist, who noted that Martinez was experiencing pain in his low back radiating down both legs, primarily the left. The only abnormalities noted on exam were decreased flexibility of the low back and a slight antalgic gait. Dr. LeGrand concluded that Martinez appeared to have a chronic mechanical low back disorder and ordered an MRI of the lumbar spine which was performed July 14, 1987. On July 16, 1987, Dr. LeGrand reviewed the results of the MRI and concluded that Martinez had a right L5/S1 defect, possibly a herniated disc. He recommended continued conservative treatment.
 
 
 10
 Dr. LeGrand saw Martinez in follow-up on March 31, 1988 and the physical exam at that time showed no ankle reflexes with 1-2+ knee reflexes. Martinez walked with a flexed posture at the lower back. Dr. LeGrand noted that Martinez had a documented herniated disc and that although they discussed treatment options, Martinez indicated that he did not want any kind of surgical procedure. Dr. LeGrand further noted that
 
 
 11
 "He wants to get on disability, but if he does have a correctable problem, I doubt that he will be able to get on his disability."
 
 
 12
 At the same visit, Dr. LeGrand filled out a form with Martinez' name on it and checked "temporary total disability."
 
 
 13
 A Medical Consultant Opinion performed for the RRB on September 8, 1987 indicated that Martinez suffered from lumbo-sacral spine disease, with pain, some spasm and x-ray changes but with no peripheral findings of significance. The consultant found that Martinez had the residual capacity to frequently lift 20 pounds, to stand and/or walk about 6 hours per 8 hour day, to sit a total of 6 hours per 8 hour day, to push or pull 50 pounds, and an unlimited ability to perform fine and/or gross manipulations.
 
 
 14
 On July 17, 1989, Dr. Robert Dickey performed an orthopedic evaluation of Martinez pursuant to the order of the RRB. Dr. Dickey noted that Martinez complained of chronic back pain which prevented him from working but was on no medication. Dr. Dickey concluded that Martinez suffered degenerative joint disease of the L5/S1 which would preclude him from performing heavy lifting, frequent bending, stooping or lifting. Dr. Dickey further determined that Martinez could stand or walk 4-6 hours per 8 hour work day, could sit 6-8 hours per 8 hour work day and could sit for 4 hours without interruption. His ability to reach, handle, push and pull were not affected by the impairment.
 
 
 15
 There were no medical reports in the record from Martinez' treating physician, Dr. Luther Martin.
 
 ANALYSIS
 
 16
 Social Security Regulations guide the RRB in making a disability determination. Aspros v. U.S. Railroad Retirement Board, 904 F.2d 384, 386 (7th Cir.1990) A decision by the RRB will be reversed only where it is not supported by substantial evidence or does not have a reasonable basis in the law. Id. at 386. The issue on appeal is not whether the claimant is disabled but whether the finding of non-disability is supported by substantial evidence in the record. Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987).
 
 
 17
 In a disability case, the claimant carries the initial burden of proving the existence of a disability that prevents him from performing his previous work. Walker, 834 F.2d at 640. The Referee found that Martinez had satisfied this burden. The burden therefore shifted to the RRB to demonstrate that there is other substantial gainful employment in the economy which claimant can perform. Id. at 640. The Referee held that the RRB had met it's burden and that Martinez has "residual capacity for full sedentary work."
 
 
 18
 On appeal, Martinez argues that the decision is not supported by substantial evidence because 1) the Referee "functionally disregarded" the testimony of the vocational consultant concerning erosion in the job market and instead applied the Medical-Vocational Guidelines or "grid;" See Appendix 2 Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 200.00-204.00 (1987), and 2) the Referee failed to accord sufficient weight to Dr. LeGrand's opinion. In addition, Martinez argues that the Referee applied an incorrect legal standard in evaluating his pain.
 
 Use of the Grid
 
 19
 The use of the grid will be upheld as long as substantial evidence supports its use. This requires only that "there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." Walker v. Bowen, 834 F.2d 635, 641 (7th Cir.1987) (quoting Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir.1986)).
 
 
 20
 The Referee reviewed the testimony and medical evidence and determined that Martinez could stand for 30 minutes, walk three blocks, and sit for one hour continuously before requiring a rotational change. The vocational consultant testified that such an individual could work the full range of sedentary jobs. Contrary to Martinez' claim, the Referee found the vocational consultant credible. The Referee did not, however, find Martinez' testimony regarding his pain credible, noting that it was imprecise and inconsistent. The credibility of witnesses is traditionally reserved to the trier of fact. Walker, 834 F.2d at 641. Based on the testimony of the vocational consultant, the Referee determined that because there was no evidence indicating that Martinez' limitations would affect his ability to perform sedentary jobs, the grid applied.
 
 
 21
 The clinical findings and medical records further support the Referee's decision. None of the physicians who treated Martinez corroborated his claim of disabling pain. Two of his physicians expressed skepticism as to his ability to obtain disability. The only clinical finding was a herniated disc, which both Dr. LeGrand and Dr. Dickey stated might be correctable with surgery. The residual functional capacity report indicated that Martinez could sit a total of 6 hours per 8 hour day. The orthopedic evaluation ordered by the RRB indicated that Martinez could work, stand or sit for 4 hours without interruption and that he has full capacity for reaching, handling, pushing or pulling.
 
 
 22
 The record fully supports the Referee's use of the grid. Based on a review of all the evidence, there was substantial evidence to support the Referee's conclusion that Martinez' limitations did not significantly diminish the range of sedentary jobs, and that therefore he was not disabled.
 
 Dr. LeGrand's Opinion
 
 23
 Martinez next claims that the Referee failed to accord sufficient weight to Dr. LeGrand's opinion because he was Martinez' treating physician. As an initial matter, we note that Dr. LeGrand was in fact a consulting physician who Martinez saw only three times. Even if we were to characterize Dr. LeGrand as a treating physician, the record indicates that the Referee did accord significant weight to Dr. LeGrand's medical reports which in fact cast doubt on Martinez disability claim.
 
 
 24
 Dr. LeGrand concluded that although Martinez had a herniated disc, he was probably not disabled because it was correctable. The fact that Dr. LeGrand simultaneously completed a form and marked "temporary total disability" is consistent with the tendency of physicians to go the extra step in helping their patients obtain benefits. Defrancesco v. Bowen, 867 F.2d 1040, 1043 (7th Cir.1989).
 
 
 25
 A treating physician's opinion is entitled to great weight only if it is supported by adequate medical data and does not conflict with other evidence in the record. Arbogast v. Bowen, 860 F.2d 1400, 1404-1405 (7th Cir.1988). Dr. LeGrand's signature on the disability form contradicts medical data, other physicians' reports and his own written opinion which expressed skepticism as to any disability. The Referee was entitled to credit part of Dr. LeGrand's report and reject other parts which were not compatible with the record. Walker, 834 F.2d at 644.
 
 Improper Legal Standard
 
 26
 Martinez' final argument is that the Referee applied an improper legal standard in evaluating the claimant's pain by "mischaracterizing the medical evidence and the testimony of the claimant." A claim of pain is evaluated under a two-pronged test. First, the claimant must present some objective medical evidence of an underlying medical condition. Veal v. Bowen, 833 F.2d 693, 698-99 (7th Cir.1987). If this prong is satisfied, then the medical evidence must be evaluated to determine whether the objective medical evidence confirms the severity of the alleged pain arising from the condition; or 2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. Veal, 833 F.2d at 699.
 
 
 27
 Martinez did produce medical evidence to establish that he suffers from an underlying medical condition which renders him unfit to perform his former job operating heavy machinery. However, Martinez failed to provide objective evidence to confirm pain of a severity that he was disabled from performing sedentary jobs. The only abnormalities on his physical exam were decreased flexibility of the low back and a slight antalgic gait. None of the tests performed provided objective evidence of a condition which would produce the alleged degree of pain. Both Dr. Dickey and the medical consultant indicated that the herniated disc would not impose severe limitations on his ability to perform sedentary work, and Dr. LeGrand indicated the condition was correctable with surgery.
 
 
 28
 The Referee accurately summarized the medical evidence, and there was substantial evidence to support his conclusion that Martinez did not suffer from disabling pain for the purposes of performing sedentary work. The Referee found Martinez' pain testimony not credible, and we defer to his determination.
 
 Conclusion
 
 29
 Because the decision of the Referee was supported by substantial evidence and a reasonable basis in the law, his decision is
 
 
 30
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Petitioner has filed a statement requesting oral argument. Upon consideration of that statement, the briefs and the record, the request for oral argument is denied and the appeal is submitted on the briefs and records