George **CARPENTIER**, Plaintiff,

v.

Louis M. **SULLIVAN**, M.D., Secretary of the Department of Health and Human Services of the United States of America, Defendant.

No. 89–1056.

United States District Court, C.D. Illinois, Peoria Division.

Dec. 10, 1990.

Marcia Straub, Peoria, Ill., for plaintiff.

K. Tate Chambers, Asst. U.S. Atty., Peoria, Ill., for defendant.

### ORDER

MIHM, District Judge.

Before the Court are a Motion by the Plaintiff George Carpentier (hereinafter "Carpentier") for summary reversal (# 9–1) and a Motion by the Defendant, the Secretary of the Department of Health and Human Services (hereinafter "Secretary"), for summary affirmance (# 13) of a final decision of the Secretary which denied disability benefits to Carpentier. This Court denies Carpentier's Motion for Summary Reversal (# 9) and grants the Secretary's Motion for Summary Affirmance (# 13).

### PROCEDURAL BACKGROUND

Carpentier originally filed an application for disability insurance benefits on May 14, 1975. (AR 80–83). He claimed that he had been disabled since April 1, 1974, due to an injured left hand. (AR 80). His application was denied initially, upon reconsideration, and by an Administrative Law Judge ("ALJ").

The ALJ denied Carpentier's application because, despite the fact that Carpentier had severely injured his left, non-dominant hand, he could perform a significant number of jobs not requiring the use of both hands as identified by a vocational expert ("VE"). (AR 136–141). After the ALJ denied Carpentier's application, Carpentier submitted evidence from his treating physicians stating that his left hand would require two more surgeries and that he would be disabled for at least one more year. Based on this new evidence, the ALJ reversed his previous denial of Carpentier's application and awarded him benefits.

Carpentier's injury to his left hand occurred on April 1, 1974. Carpentier had been working with a hand saw when he lacerated his left wrist, damaging tendons, nerves and bone. (AR 429). As late as April of 1981, Carpentier continued to have surgery scheduled for the left wrist,[1] and continued to have significant loss of function of the wrist. His treating physician reported on April 15, 1981 that Carpentier would have surgery on May 4, 1981 and that the wrist had extreme motion limitations and almost complete loss of grip. (AR 492).

In May of 1982, Dr. Adrian Feinerman found that Carpentier had some decreased motion in his left wrist but that his grip strength was normal and his digital dexter-

---

1. The evidence suggests that Carpentier had at least 13 surgical procedures on the wrist. (AR 496).

ity was not impaired. (AR 497). Further, although the doctor found that Carpentier was unable to move the interphalangeal joint of the left thumb, he could appose the left thumb and little finger. (*Id.*).

Thus, in August of 1982, Carpentier was notified that his disability had ceased as of July of 1982. (AR 176–179). Carpentier did not appeal that determination. However, Carpentier filed a new application for disability insurance benefits on February 22, 1984. (AR 180–183). His application was denied initially and upon reconsideration and Carpentier sought no further administrative review of the denial of this application.

On July 25, 1986, Carpentier filed his current application for disability insurance benefits. (AR 192–195). His application was denied initially and upon reconsideration. Also, about the same time, the Secretary reviewed his previous decision to terminate Carpentier's previous period of disability, and he decided that that termination had been correct. (AR 199–202).[2] The denial of Carpentier's current application and the original decision to terminate benefits were then reviewed before the ALJ.

On August 11, 1988, the ALJ determined that the previous decision to terminate Carpentier's disability benefits had been correct because Carpentier's condition had medically improved. The ALJ found that Carpentier's improvement was related to his ability to work and that, with this improvement, Carpentier was able to perform a significant number of jobs in the economy. (AR 23–24). As for Carpentier's current application, the ALJ denied that application because he found that, prior to the time Carpentier's insured status expired on December 31, 1982, Carpentier was able to perform a significant number of jobs in the economy. (AR 25–26).

The Appeals Council then denied Carpentier's request for review of the ALJ's decision on January 5, 1989. This made the

ALJ's decision the Secretary's final decision for judicial review. Carpentier timely sought judicial review of the Secretary's decision on March 6, 1990.

The ALJ's decision considered Carpentier's problems with his left wrist, his chronic bronchitis, and his hypertension. However, because Carpentier's insured status expired in December of 1982, the ALJ focused his attention only on the impairments that manifested themselves on or before that time. The ALJ did note that, as of the date of his decision (August 11, 1988), Carpentier also had right wrist carpal tunnel syndrome, chronic obstructive pulmonary disease, degenerative joint disease, atypical chest pain, abdominal pain, cervical strain, degenerative disc disease, and leukoplakia. (AR 25).

## ISSUE

The issue before the Court is whether or not there is substantial evidence in the record to support the Secretary's decision that Carpentier's disability ceased in July of 1982 and that Carpentier did not establish entitlement to disability before his insured status expired on December 31, 1982.

## APPLICABLE LAW

In this case, two different sets of procedures were used by the ALJ to review the claims because the ALJ is required to use one set of procedures to review a claimant's termination of benefits and another set of procedures to review the claimant's later application to reinstate benefits.

■ Under the Social Security Act, a claimant bears a continuing burden to show that he is disabled by means of medically acceptable clinical and laboratory diagnostic techniques to prevent the termination of his benefits. *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The process of evaluating whether a continuing disability should be terminated was codified by § 2 of the Social Security Disability Benefits Reform

**2.** Carpentier was an unnamed member of the class in *Young, et al. v. Bowen,* Case No. 83–5321 (S.D.Ill.). Pursuant to the parties' agreement in that case, Carpentier was entitled to

have his previous termination decision reviewed under the standards set forth in § 2 of the Social Security Disability Benefits Reform Act of 1984, PL 98–460.

Act of 1984, Pub.L. 98–460, 42 U.S.C. § 423(f). Regulations implementing these standards are codified at 20 C.F.R. § 404.1594.

The evaluation determining whether benefits for a continuing disability should be terminated is as follows:

(1) Is the claimant working? If so (and if there is no issue of a trial work period), his disability will have ended;

(2) If a claimant is not working, do his impairments meet or equal the listings? If so, disability will be continued;

(3) If the claimant's impairments do not meet or equal the listings, has there been medical improvement?[3] If yes, the sequence proceeds to step 4; if not, it proceeds to step 5;

(4) Is the medical improvement related to the claimant's ability to work? If so, the sequence proceeds to step 6; if not, it proceeds to step 5;

(5) If there is no medical improvement, or if the medical improvement is not related to the claimant's ability to work, does one of the exceptions to medical improvement apply?[4] If an exception does apply, the disability has ended, but if none of the exceptions apply, disability is continued;

(6) If medical improvement is related to the ability to work, are all current impairments severe in combination? If not, the claimant is no longer disabled;

(7) If the impairments are severe, the Secretary determines the claimant's residual functional capacity and considers whether he can do work he has done in the past. If he can, he is no longer disabled.

(8) If he cannot do his past work, the Secretary decides whether he can do other work given his residual functional capacity, age, education, and work experience. If so, he is not disabled.

*See*, 20 C.F.R. § 404.1594(f).

The process of evaluating a current disability claim is given in the following analysis. In order to be entitled to disability benefits under SSI, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See*, 20 C.F.R. §§ 494.1566, 416.966 (1986).

The establishment of disability under the Social Security Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir.1980). That factual determination is made by using a five step test. *See*, 20 C.F.R. §§ 404.1520, 416.920.

The five step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or

---

**3.** Medical improvement is a decrease in the medical severity of the impairments present at the time of the most recent favorable medical determination. 20 C.F.R. § 404.1594(b)(1). In this case, Carpentier's most recent favorable determination was in May of 1981 when his disability was found to have continued. (AR 168).

**4.** The exceptions under which a claimant's disability benefits may be terminated without medical improvement related to the ability to work are set out at 20 C.F.R. § 404.1594(d) and (e). None of these exceptions apply to this case.

at steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker,* 732 F.2d 605 (7th Cir.1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Secretary to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler,* 779 F.2d 1250 (7th Cir.1985); *Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984).

The rules in the grid, set out in Appendix 2 of Subpart P of 20 C.F.R. § 404, are considered in determining whether a plaintiff with exertional impairments is or is not disabled. The regulations provide that if an individual suffers from a nonexertional impairment, as well as an exertional impairment, both are considered in determining residual functional capacity. 20 C.F.R. §§ 404.1545, 416.945. If a finding of disability cannot be made based upon exertional limitations alone, the rules established in Appendix 2 are used as a framework in evaluating disability. In cases where the individual has solely a nonexertional impairment, such as pain or mental impairment, a determination as to whether disability exists is based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in Appendix 2.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). In determining whether the ALJ's findings are unsupported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct.

1420, 1427, 28 L.Ed.2d 842 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

In this case, the Secretary decided that Carpentier's benefits should be terminated in step 8 of the eight step process given to determine whether disability benefits should be terminated. The Secretary decided that Carpentier's disability had ended because his condition evidenced medical improvement related to the ability to work and because, although Carpentier could not perform his past work, he could perform a significant number of jobs in the national economy.

The Secretary decided Carpentier's current disability claim at step 5 of the five step sequential evaluation process. The Secretary found that Carpentier was not entitled to benefits under this current application because, prior to the expiration of his insured status, Carpentier could perform a significant number of other jobs in the national economy.

## DISCUSSION

Since the issues regarding Carpentier's termination of benefits and his current application for benefits are similar, the Court will discuss these issues together.

Carpentier asserts that the ALJ failed to consider a number of medical reports and witnesses who established that, when the record is taken as a whole, Carpentier's medical condition constituted a disability. Carpentier asserts that the ALJ did not fully evaluate the record and simply chose to disregard certain evidence before him.

This Court disagrees with Carpentier. As noted earlier, Carpentier's insured status for disability benefits expired December 31, 1982. Thus, as noted earlier, the ALJ properly focused his attention on impairments that manifested themselves on or before that date. The ALJ did note that as of the date of his decision (August 11, 1988), Carpentier also had right wrist carpal tunnel syndrome, chronic obstructive

pulmonary disease, degenerative joint disease, atypical chest pain, abdominal pain, cervical strain, degenerative disc disease and leukoplakia. (AR 25). However, all these current impairments are irrelevant because they do not show that Carpentier was disabled before his insured status expired in December of 1982.

■ By May of 1982, there was substantial evidence in the record showing that Carpentier had regained significant function in his left hand. Dr. Adrian Feinerman found that Carpentier's grip strength was then normal, his digital dexterity was not impaired and that he could appose the thumb and the little finger. (AR 497).

Carpentier argues that his medical improvement was not related to his ability to work because he had never regained major functioning in his left hand. However, as the Secretary contends, to conclude that Carpentier's medical improvement was related to the ability to work, the Secretary was only required to show that Carpentier's residual functional capacity for basic work-related activities had increased. *See,* 20 C.F.R. § 404.1594(b)(3) and (4).

After the ALJ determined that Carpentier had experienced medical improvement related to his ability to work, he was next required to determine whether Carpentier was able to perform his past work or any other work in the economy. It is undisputed that Carpentier would be unable to perform his past work. However, the ALJ decided that, as of July 1982, and continuing through December of 1982 when Carpentier's insured status expired, Carpentier had the residual functional capacity to perform light work activity except for jobs requiring fine bilateral manual dexterity, fine left hand manipulation, more than occasional lateral climbing, or excessive exposure to lung irritants, humidity, or temperature extremes. (AR 24).

Carpentier's physical examination in May of 1982 with Dr. Adrian Feinerman revealed no difficulties that would prevent the performance of work activities except for problems with Carpentier's left wrist and mild bronchitis. (AR 497–498). Further, after reviewing the evidence in the

record, Dr. Douglas Gover, in an evaluation done on March 7, 1987, concluded that, as of 1982, Carpentier could perform even greater than light work activity. (AR 380). Dr. Bernard Stevens reviewed the evidence in the record and concurred in Dr. Gover's assessment. (AR 384). Thus, substantial evidence supports the ALJ's decision that Carpentier had at least the capacity for a wide range of light work.

■ Because Carpentier was unable to perform his past relevant work, the burden fell upon the Secretary to show other jobs in the economy that Carpentier was able to perform despite his impairments. *See, Walker v. Bowen,* 834 F.2d 635, 640, n. 3 (7th Cir.1987). To meet this burden, the ALJ employed the medical-vocational guidelines (the "grid"). *See,* 20 C.F.R. Part 404, Subpart P, Appendix 2. The grid provides that when findings of fact made with respect to a particular individual's vocational capacity coincide with all the criteria of a particular grid rule, the rule directs a conclusion as to whether the individual is or is not disabled. *Id.* at § 200.00. Even if an individual's vocational profile does not exactly correspond with the grid's criteria, application of the grid is still appropriate when those factors outside the grid's criteria do not significantly diminish the range of work otherwise available. *Warmoth v. Bowen,* 798 F.2d 1109 (7th Cir.1986). When the grid is applied, it represents the Secretary's showing, through administrative notice, that a significant number of jobs exist in the national economy. Where applicable, the grid constitutes substantial evidence sufficient to uphold the Secretary's decision. *Walker,* 834 F.2d at 640.

The ALJ applied grid rules 202.17 and 202.18 in this case. These rules direct that a younger individual, with a limited education or less, who has no transferable work skills, but is able to perform light work activity, is not disabled because he is able to perform a significant number of jobs in the national economy. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2.

Although Carpentier's lack of manipulative ability in his left hand might diminish some of the jobs available to him at the

time his insured status expired, use of the grid to meet the Secretary's burden in this case was appropriate. The Seventh Circuit has held that:

To uphold the ALJ's finding that the grids may be used in a given case, we require only "that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." (Citations omitted).

*Walker*, 834 F.2d at 641.

In this case, such reliable evidence was present. A vocational expert testified that Carpentier could perform a significant number of security guard and watchman jobs even if dexterity in both of his hands was impaired. (AR 73-74). Thus, the vocational expert's testimony, together with the grid, constitutes substantial evidence that Carpentier could perform a significant number of jobs in the economy.

### CONCLUSION

Based on the foregoing, the Court GRANTS the Secretary's Motion for Summary Affirmance (# 13) and DENIES Carpentier's Motion for Summary Affirmance (# 9). The Clerk is directed to enter judgment in favor of the Defendant Secretary and against the Plaintiff Carpentier.