**Robert DIFFORD, Plaintiff–Appellant,**

**v.**

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

**No. 89–3445.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1990.

Decided Aug. 10, 1990.

Eric P. Allen (argued), Shapiro, Kendis & Assoc. Co., Cleveland, Ohio, for plaintiff-appellant.

Maureen E. Murphy, Asst. U.S. Atty., Lynne H. Buck, Office of U.S. Atty., Cleveland, Ohio, Carlotta P. Wells (argued), Department of Health & Human Services, Office of Gen. Counsel, Baltimore, Md., for defendant-appellee.

Before MERRITT, Chief Judge, and JONES and RYAN, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant Robert Difford appeals the district court judgment affirming the termination of his social security disability benefits. For the following reasons, we reverse.

## I.

Robert Difford was born on February 2, 1947 and has an eleventh grade education. He worked as a crane operator from 1966 to 1975 and then as a carpenter's helper from June 1984 to January 1985.

On October 19, 1976, Difford applied for social security disability benefits, claiming he was disabled from transverse myelitis, an inflammatory problem affecting the spinal cord. That application for benefits was approved and Difford began receiving disability benefits from the onset date of April 2, 1976. In June 1982, he was notified of a proposal to terminate his benefits because current medical records showed "no abnormal neurological findings, no evidence of neurological disease and no loss of motion of the spine." J.App. at 93. Difford's disability benefits were terminated as of August 31, 1982 and his request for reconsideration of the termination was denied.

Difford did not appeal the termination, but instead filed a new application on May 16, 1983 for disability benefits. That application was denied and the Appeals Council denied claimant's request for review on April 13, 1984. This appeal does not involve the 1983 application.

In June 1984, Difford obtained employment as a carpenter's helper, cutting plywood panels for seats in recreational vehicles. Difford stated that he had trouble lifting the plywood because of pain and that he missed work often. On January 2, 1985, Difford injured his knee and back in an accident at work. He had surgery on his right knee in January 1985 and has been unemployed since then.

Because Difford is a member of the *Holden* class,[1] he received notice in February 1985 that he had the right to apply for a reinstatement of his disability benefits and to have that request reviewed under the appropriate medical improvement standard. On March 19, 1985, Difford requested review of his case.

On October 8, 1986, the Secretary found, upon review of Difford's case, that the original termination decision was correct. That finding was affirmed on reconsideration. On January 28, 1988, an Administrative Law Judge ("ALJ") affirmed the Secretary's decision. The ALJ found that Difford's disability ceased *as of June 1982* because his condition had medically improved and limited review of the evidence of Difford's condition to 1982, considering no evidence after that date. On April 14, 1988, the Appeals Council refused claimant's request for review. Claimant then sought judicial review. United States Magistrate David S. Perlman affirmed the Secretary's termination of claimant's disability benefits. This appeal followed.

## II.

This case turns on the correct interpretation of certain provisions of § 2(a) of the Social Security Benefits Amendments of

---

1. The district court in *Holden v. Heckler*, 584 F.Supp. 463 (N.D. Ohio 1984), found that the Secretary had incorrectly interpreted statutes and regulations concerning termination of benefits. Class members received the right to apply for review of their case under the correct "medical improvement" standard.

1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984), codified at 42 U.S.C. § 423(f), which sets the standard of review for termination of disability benefits. Those provisions, in relevant part, provide as follows:

**(f) Standard of review for termination of disability benefits**

A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—

(1) substantial evidence which demonstrates that—

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B)(i) the individual is *now* able to engage in substantial gainful activity....

\* \* \* \* \* \*

Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or *current* condition which is presented by the individual or secured by the Secretary. Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 423(f) (Supp. III 1985) (emphasis added).

The regulations promulgated pursuant to this statute set forth the evaluative steps to be used in determining if an individual is still disabled. The steps at issue here include the following:

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). *This determination will consider all your current impairments* and the impact of the combination of those impairments on your ability to function.

\* \* \* \* \* \*

(7) If your impairment(s) is severe, *we will assess your current ability to engage in substantial gainful activity* in accordance with § 404.1561. That is we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(6)–(8) (1989) (emphasis added).

██ Under the rules of statutory construction, if the intent of Congress is clear from the language of the legislation itself, then the courts, as well as the implementing agency, must give effect to the statute as written. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Bradley v. Austin,* 841 F.2d 1288, 1293 (6th Cir.1988). Where statutory language is ambiguous, the courts should review the legislative history in conjunction with the statutory provision at issue. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). If Congress declined to address a specific question raised in a particular case, then the court must determine whether the agency's resolution of or response to the ambiguity is derived from a

permissible construction of the statute. *See Chevron, U.S.A.*, 467 U.S. at 843, 104 S.Ct. at 2782.

### A.

 Difford argues that the statutory language makes it clear that termination may not occur if the individual is *currently* unable to engage in substantial gainful activity, and that review must give weight to any new evidence in the file which the individual presents concerning his present condition. Difford claims that the ALJ erred in failing to assess all of his present impairments, and considering just those impairments existing at the time of termination. Difford claims that if the ALJ had applied the law correctly, he would have assessed his condition as of January 28, 1988. Difford cites to the language of 20 C.F.R. § 404.1594(f)(6)–(8) (1985) and points out that the statute clearly speaks of *current* impairments and the individual's present ability to work. Difford also refers to the legislative history which states:

> (N)o one will be found to be no longer disabled unless he or she is now able to engage in SGA [substantial gainful activity] when all of his or her *current* impairments have been considered.... This provision allows consideration of all impairments in assessing whether a person meets the definition of disability and provides that only persons who have medically improved and can presently do SGA are found no longer disabled.

50 Fed.Reg. 50,122 (1985) (emphasis added).

In addition, Difford cites to this court's decisions in *Haynes v. Secretary*, 734 F.2d 284, 288 (6th Cir.1984) and *Gist v. Secretary*, 736 F.2d 352, 355–57 (6th Cir.1984), which state that the applicable standard of judicial review is whether the Secretary's finding that there has been medical improvement in the claimant's condition to the extent that the claimant is *now* able to engage in substantial gainful activity is supported by substantial evidence. Both of these decisions, however, involve contemporaneous review of termination of benefits and do not involve the seven year retro-

spective inquiry of interim employment factors present in the instant case.

The Secretary argues that the term "current," as used in the statutory and regulatory language, relates merely to the time of the cessation decision under review and thus relates to whether an individual was "currently disabled" at the time that his or her claim was being reviewed for purposes of determining the presence or absence of medical improvement. Therefore, the Secretary contends that the only relevant time periods simply are the time of the most recent favorable decision and the time of the cessation determination. The Secretary further argues that this interpretation of the term "current" as used in the implementing regulations found in 20 C.F.R. § 404.1594 is consistent with § 2(d) of the 1984 Disability Amendments and the relevant legislative history. Section 2(d)(3) required that the Secretary apply the medical improvement standard to unnamed members of the class established in *Holden v. Heckler* who elected review under the statute. The Secretary was charged with responsibility for determining whether such individuals should have had their benefits terminated. Additionally, in the report associated with the bill enacted as the 1984 Disability Amendments, Congress expressed concern that the process of redetermination not impose undue administrative and program costs. Examining the legislative history, the Secretary stated that:

> one of the primary purposes of section 2 was "to bring a halt to the acrimonious and burgeoning 'medical improvement' litigation" by setting forth the standard to be applied in determining whether an individual disability has ceased. S.Rep. No. 466, 98th Cong., 2d Sess. at 17 (1984).... Congress was concerned about "unnecessarily increasing the cost of the disability program by broadly applying the new standard to thousands of individuals who had effectively accepted the finding of ineligibility and abandoned their claims...." *Id.* at 14. Further, the conference report exhibited sensitivity with respect to the "administrative difficulty" imposed on the Secretary by

virtue of the task of redetermining the cases of the unnamed class members. H.R.Rep. No. 1039, 98th Cong., 2d Sess. at 28 (1984).

Secretary's Brief at 24. Based on these factors, the Secretary concludes that Congress intended to provide class members with the opportunity to have the new standard applied to their cases in order to put them in the same position they would have been in had the correct standard applied at the time the disability was found to have ceased. *Id.*

The district court noted that substantial gainful employment ordinarily breaks the chain of disability and factored in Difford's six months of employment at Youngstown Trailer and the industrial accident he suffered there. The court found that Difford's knee and arthritis impairments were direct results of the job-related accident at Youngstown Trailer. Therefore, the court concluded that the relevant time frame to the redetermination process was from 1976–1982 when Difford's benefits were terminated. The court determined that the ALJ's decision not to consider the evidence in the post–1982 medical reports was logically consistent with the purpose of the redetermination. Moreover, the court agreed with the ALJ's finding that because those reports were based on Difford's subjective complaints of alcoholism and drug abuse, and were not consistent with the medical evidence, they were not credible.

Though we have found no cases which interpret the meaning of "current condition" or "now able to engage in substantial gainful activity," as stated in § 423(f), and the implementing regulations, we believe that the plain meaning of statutory references to "now" or "current" compels a consideration of an individual's ability to perform substantial gainful activity at the time of the hearing. In our view, affirmance of the ALJ's decision to limit review to Difford's condition as of the 1982 termination requires a contortion of the legislative intent as evidenced by the plain language of the statute. We note, however, that interpretation of § 423(f) to require an assessment of Difford's condition as of the 1988 hearing does not preclude a finding by

the Secretary that the length of time of Difford's employment with Youngstown Trailer is a period of non-disability for which benefits may be withheld. We therefore reverse the district court's holding that the ALJ correctly interpreted § 423(f) and its implementing regulations.

**B.**

Difford also challenges the ALJ's decision to consider evidence of medical improvement only up to 1982 on constitutional grounds. He alleges that he suffered a violation of procedural due process because the ALJ's ruling served to deprive him of the opportunity to present evidence regarding his present impairments. Difford does not challenge the underlying statute or the regulations at issue. His only challenge is to the ALJ and the district court's interpretation of the term "current" to mean contemporaneous with the termination of benefits. The interest of an individual in continued receipt of social security disability benefits is a statutorily-created property interest protected by the fifth amendment. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The essence of due process is the requirement that a person in jeopardy of serious property loss be given notice of the case against him and acquire meaningful opportunity to meet it. *Id.* at 348–49, 96 S.Ct. at 909–10. Because we agree with Difford's interpretation of the terms "now" and "current" as used in § 423(f) and the regulatory language and remand this case for hearing consistent with the opinion, any due process violation that Difford may have suffered will be remedied.

**C.**

Finally, the Secretary argues that the ALJ's decision to terminate Difford's benefits based on his condition in 1982 is based on substantial evidence. We have determined that Difford's ability to engage in substantial gainful activity should be assessed as of the 1988 hearing, and therefore, need not address the argument.

### III.

For the above stated reasons, we hereby REVERSE the judgment of the district court and REMAND for proceedings consistent with the opinion.