**Ronald C. MABLES, Plaintiff,**

**v.**

**Louis M. SULLIVAN, M.D., Secretary for the Dept. of Health and Human Services, Defendant.**

**No. 91–1120.**

United States District Court, C.D. Illinois, Peoria Division.

Jan. 20, 1993.

Chester C. Fuller, Peoria, IL, for plaintiff.

K. Tate Chambers, Asst. U.S. Atty., Peoria, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiff's Motion for Summary Reversal [Doc. # 13, Part 1] and Defendant's Motion to Affirm [Doc. # 14, Part 1]. At issue is whether the ALJ properly applied the legal standards for "continuing disability" reviews to the facts of this case. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(f)(1)–(8). For the reasons stated below, the Court **REVERSES** the Secretary's decision, and **REMANDS** this case for rehearing. Plaintiff's Motion for Summary Reversal is **GRANTED,** and the Defendant's Motion to Affirm is **DENIED.**

## PROCEDURAL HISTORY

On October 22, 1987,[1] the Social Security Administration (SSA) determined that Plaintiff, Ronald C. Mables, was disabled, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.11 (1991),[2] and entitled to disability benefits. (AR 13).[3] On August 2, 1989,[4] Plaintiff received notice that his benefits were being terminated because his disability had ceased according to the available medical evidence. (AR 13, 16, 70–72).[5] On February 23, 1990, at a hearing held before the ALJ, Alan Wienman, Plaintiff appealed the decision by the Secretary of Health and Human Services to terminate his benefits. (AR 25–48). On August 10, 1990, the ALJ entered an Order, finding that Plaintiff was no longer disabled because medical evidence indicated improvement of Plaintiff's original impairments related to his ability to do a "full-range of sedentary work"[6] for which he was vocationally qualified. (AR 11–19). *See* Social Security Act, 42 U.S.C. §§ 416(i), 423(d), (f); 20 C.F.R. § 404.1594(f)(8) (1992). On Octo-

ber 3, 1990, Plaintiff requested a review of the ALJ's decision. (AR 7). On March 27, 1991, the Appeals Council denied Plaintiff's request for review, (AR 4) making the ALJ's decision a final judgment from which this appeal was taken.

## BACKGROUND

Plaintiff Ronald C. Mables currently suffers from degenerative arthritis in his left ankle, pain in his lower back, and an alleged inability to sit or walk for prolonged periods of time. (AR 15–16). Plaintiff is also unable to lift or carry more than a few pounds, and he cannot climb, balance, stoop, crouch, kneel or crawl. (AR 16). Plaintiff has manifested each of these problems since August 1, 1989, (AR 25–48), the date Plaintiff was notified that his disability insurance benefits were to be terminated. (AR 18). At issue is whether Plaintiff has a "continuing disability" pursuant to 20 C.F.R. § 404.1594(f)(1)–(8).

## THE LEGAL STANDARDS

The standard of review for termination of disability benefits is controlled by 42 U.S.C. § 423(f) which states:

**42 U.S.C. § 423(f). Standard of review for termination of disability benefits.**

A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—

(1) substantial evidence which demonstrates that—

---

**1.** This date was obtained from the Motion to Affirm at 2, but is not contained in the record.

**2.** X-rays indicated that there was not a solid union of the left femur and plaintiff was not able to place his full-weight on the leg 12 months after the initial fracture. (AR 16).

**3.** AR refers to the Administrative Record before the district court on review.

**4.** *See infra* note 10.

**5.** *See supra* note 1.

**6.** "Sedentary work requires lifting no more than ten pounds with occasional lifting and carrying only of lighter objects such as docket files, ledgers, and small tools. Sedentary work is performed primarily in a seated position, although occasional standing and walking is often necessary." Motion To Affirm at 6, citing 20 C.F.R. § 404.1567(a) (1992).

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B)(i) the individual is now able to engage in substantial gainful activity....

\* \* \* \* \* \*

Any determination under this subsection shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Secretary. Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 423(f) (Supp.1992).

The regulations promulgated pursuant to this statute set forth the evaluative steps used to determine whether an individual's disability will continue. The eight steps are:[7]

(1) Is the claimant working? If so, (and if there is no issue of a trial work period), his disability will have ended;

(2) If a claimant is not working, do his impairments meet or equal the listings? If so, disability will be continued.

(3) If the claimant's impairments do not meet or equal the listings, has there been medical improvement?[8] If so, the sequence proceeds to step 4; if not, it proceeds to step 5;

(4) Is the medical improvement related to the claimant's ability to work? If so, the sequence proceeds to step 6; if not, it proceeds to step 5;

(5) If there is no medical improvement, or if the medical improvement is not related to the claimant's ability to work, does one of the exceptions to medical improvement apply?[9] If an exception does apply, the disability has ended, but if none of the exceptions apply, disability is continued;

(6) If medical improvement is related to the ability to work, are all current impairments severe in combination? If not, the claimant is no longer disabled;

(7) If the impairments are severe, the Secretary determines the claimant's residual functional capacity and considers whether he can do work he has done in the past. If he can, he is no longer disabled.

(8) If he cannot do his past work, the Secretary decides whether he can do other work given his residual functional capacity, age, education, and work experience. If so, he is not disabled.

20 C.F.R. 404.1594(f)(1)–(8).

■ To prevent termination of benefits under the Social Security Act, the claimant bears the burden of showing by medical evidence that he/she is disabled. *See Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Nelson v. Sullivan,* 946 F.2d 1314, 1315 (8th Cir.1991); *Carpentier v. Sullivan,* 755 F.Supp. 816 (C.D.Ill.1990). The Secretary's burden, however, is to show that medical improvement has taken place and is related to plaintiff's ability to work. *See* § 2 of the Social Security Disability Benefits Reform Act of 1984, P.L. 98–460.[10]

7. *See* 20 C.F.R. § 404.1520(a) ("[o]nce you have been found entitled to disability benefits, we follow a somewhat different order of evaluation to determine whether your entitlement continues as explained in § 404.1594(f)(6).").

8. *Medical improvement is a decrease in the medical severity of the impairments present at the time of the most recent favorable medical determination.* 20 C.F.R. § 404.1594(b)(1).

9. The exceptions under which a claimant's disability benefits may be terminated without med-

ical improvement related to the ability to work are set out at 20 C.F.R. § 404.1594(d) and (e).

10. The Conference Agreement on the Standard of Review for 42 U.S.C. § 423(f) stated: "[t]he claimant's obligations to establish the existence of ... disability with regard to the continuing disability proceeding are the same as [the] obligations with regard to an initial determination." However, "the conference agreement eliminates language in the Senate Bill referring to the burden of proof being on the claimant in the case of medical improvement determinations."

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Pitts v. Sullivan,* 923 F.2d 561 (7th Cir.1991). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls upon the Secretary (or the Secretary's designate, the ALJ)." *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir.1990) (quoting *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987)). Credibility findings made by the ALJ are entitled to considerable deference and will be affirmed unless claimant can show that they are "patently wrong." *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989).

## THE ALJ'S FINDINGS

Plaintiff was born January 8, 1953, (AR 27) and was thirty-six years old when his disability benefits were terminated.[11] Plaintiff completed eleven grades of school and obtained a GED in April 1986. (AR 29). From 1977 until December 1986, he worked in the railroad industry as a trackman, machine operator, foreman and inspector.[12] (AR 13, 107). On December 15, 1986, Plaintiff shattered his left femur and left ankle in a car accident. (AR 13). The

Plaintiff applied for disability benefits on July 14, 1987. (AR 13). The application was granted on October 22, 1987 because medical evidence indicated that within one year of the accident the bone in his left femur had not healed, and Plaintiff could not place his full weight on the left leg. (AR 13). The Social Security Administration (SSA) determined that this impairment met the severity of the criteria of Listing 1.11 of the Listing of Impairments of Appendix 1 to Subpart P.[13] (AR 13).

In July 1989, Plaintiff's file was reviewed for medical improvement related to his ability to engage in gainful employment. (AR 13). With regard to Plaintiff's original disability, the evidence indicated that Plaintiff's left femur had healed, and he was able to put his full weight on the leg (AR 16), but the rest of the medical evidence cited by the ALJ varied. (AR 15–16).

On June 21, 1989, Dr. Rabinowitz indicated that (1) Plaintiff's range of movement was limited in his left hip and ankle, and he experienced pain when he moved those joints; (2) Plaintiff's left leg was a quarter inch shorter than his right leg due to the fracture of his left femur; (3) Plaintiff was unable to do straight leg raising; (4) Plaintiff was unable to do heel to toe walking or squatting; (5) the neurological exam indicated a mild motor weakness in the left lower, but had no significant atrophy; (6) X-rays indicated deformity in the proximal left femur with hypertrophic bony changes in soft tissues medial to the left femur; and (7) Plaintiff's left leg had excessive hypertosis and callus formation. (AR 15; 204–210).

On August 14, 1989, and June 23, 1989 through March of 1990, Dr. Traina indicat-

---

**11.** Plaintiff's benefits were terminated on August 1, 1989; he received notice dated August 2, 1989, but the benefits did not run out until September, 1989. (AR 13). On January 8, 1993 Plaintiff was 40 years old. He is married and has six children. (AR 29).

**12.** The ALJ found that Plaintiff's impairments prevented him from doing his past work. (AR 18, Finding 10). *See* 20 C.F.R. § 404.1594(f)(7) (1992).

**13.** Listing 1.11 states:
> Fracture of the femur ... with solid union not evident on X-ray and not clinically solid, when such determination is feasible, and return to full weight-bearing status did not occur or is not expected to occur within 12 months of onset.

Impairments described in the Listings are presumptively considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a) (1992).

ed that: (1) Plaintiff had degenerative joint disease of the left ankle (arthritis); (2) ankle replacement was an option, but not definitively contemplated; (3) Plaintiff experienced extreme limitations in his ability to sit or walk for prolonged periods of time (AR 211); (4) a semi-sedentary type of work would be appropriate (AR 15–16; 211–27).

On May 25, 1990, Dr. Roy reported that Plaintiff experienced pain, but had a full-range of movement in his left hip and a slight limitation of movement in his left ankle. Degenerative arthritis was present in the left ankle.[14] Plaintiff could not tip-toe walk, nor could he stand or walk for prolonged periods of time. Dr. Roy believed Plaintiff could sit for prolonged periods but could never climb, balance, stoop, crouch, kneel or crawl. He could push or pull. (AR 16; 245–46).

## DISCUSSION

■ The arguments of the parties are not relevant for the following reasons. The ALJ's implicit determination that the Plaintiff's impairments do not meet or exceed those in the Listings may be erroneous.[15] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1992). Although medical evidence in the record supports the ALJ's finding that Plaintiff's initial disability (Listing 1.11) had ceased at the time benefits were terminated,[16] it appears that the ALJ may not have properly applied the "continuing disability" standard when he determined Plaintiff's "residual functional capacity." (RFC).

The Secretary or ALJ should not move to an assessment of RFC until it is determined that the Plaintiff's impairments do not meet or exceed those in the Listings. *See* 20 C.F.R. § 404.1596(b)(4). To make this determination, the regulations require the ALJ to consider not only the Plaintiff's most recent disabling condition, but also the severity of Plaintiff's current impairments. If medical evidence demonstrates that a plaintiff's impairments are severe enough to qualify as a disability under a new Listing, then the analysis stops.

In this case, Plaintiff developed a new impairment—degenerative arthritis—arising out of the initial impairment—fracture of the left femur and ankle. Although medical evidence demonstrated that the initial impairment had ceased, (AR 16), the evidence also indicated that a new impairment, for which benefits had never been officially granted, may have rendered Plaintiff disabled under a different Listing. (AR 15–16). The Court is unable to make this factual finding, but it appears that Listing 1.03(A) and (B)[17] is relevant to Plaintiff's medical condition, given the following medical evidence:

**14.** The ALJ did not mention this fact, referred to at AR 246.

**15.** Impairments described in the Listings are presumptively considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a) (1992). Thus, a person with impairments which meet or exceed those in the Listings is presumptively disabled and entitled to benefits. This presumption is not recognized, however, merely because plaintiff was previously found to be disabled. *See* § 2 of the Social Security Disability Benefits Act of 1984, P.L. 98–460 (conference report on standard of review states: "[t]he conferees intend that determinations of continuing eligibility should be made on a basis which is as nearly neutral as possible. The Secretary should reach conclusions on the basis of the weight of the evidence, as applied to the statutory standards specified in this Amendment, and without any presumption as to whether the individual is or is not disabled."). *See also Haynes v. Secretary*

*of Health and Human Services*, 734 F.2d 284 (6th Cir.1984) (cited in *Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir.1987)); *Polaski v. Heckler*, 751 F.2d 943, 946 (8th Cir.1984).

**16.** *See supra* notes 1, 9.

**17.** Section 1.03 states:
> **1.03. arthritis of a major weight-bearing joint (due to any cause).**
> With history of persistent joint pain and stiffness with signs of marked limitation of motion of the affected joint on current physical examination. With:
> A. Gross anatomical deformity of hip or knee ... supported by x-ray evidence of either significant bony destruction and markedly limiting ability to walk and stand.
> B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight bearing status did not occur, or is not expected to occur within 12 months of onset.

(1) *Dr. Rabinowitz' June 21, 1989 Report:* Plaintiff's range of movement was limited in his left hip and ankle and he experienced pain when he moved these joints; his left leg was a quarter inch shorter than his right leg due to the fracture of his left femur; X-rays indicated deformity in the proximal left femur with hypertrophic bony changes in soft tissues medial to the left femur; Plaintiff's left femur had excessive hypertosis and callus formation. (AR 15; 204–210).

(2) *Dr. Traina's reports of August 14, 1989 and June 23, 1989–March 1990:* Plaintiff had degenerative joint disease of the left ankle (arthritis); ankle arthrodesis (replacement) was an option, but not definitively contemplated; Plaintiff experienced extreme limitations in his ability to walk. (AR 15–16; 211–227).

(3) *Dr. Roy's June 13, 1990 report:* At a May 25, 1990 examination Plaintiff experienced pain, but a full-range of movement in his left hip with a slight limitation of movement in his left ankle; degenerative arthritis present in left ankle; Plaintiff could not stand or walk for prolonged periods. (AR 16; 245–46).

There are two ways to approach the problem presented by development of a new listed impairment prior to termination of benefits. Both approaches start with two premises: first, the ALJ must consider all the evidence available in the individual's case file, including new evidence concerning the individual's prior or *current* condition which is presented by the individual or secured by the Secretary. 42 U.S.C. § 423(f) (Supp.1992); second, the Plaintiff cannot be currently engaged in substantial gainful employment. *See* 20 C.F.R. § 404.-1594(f)(1).

The approach differs at step 2. Step 2 requires the ALJ to determine whether the Plaintiff has an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of Part 404. *See* 20 C.F.R. §§ 404.-1594(f)(2); 404.1525 and 404.1526. If the ALJ finds that a listed impairment exists, disability will be found to continue. *See* 20 C.F.R. § 404.1594(f)(2). Listed impairments are *per se* disabilities. *See* 20 C.F.R. § 404.1525. If the ALJ concludes that a person does not have a listed impairment, this conclusion does not mean that the plaintiff is not disabled; it only means that the plaintiff is not *per se* disabled. In these situations the ALJ proceeds to steps 3 thru 8 to determine whether disability exists. The ambiguity at step 2 [18] is whether the regulations require the ALJ to canvas the entire file to determine if all Plaintiff's prior and current impairments meet or exceed those in the Listings, or whether the regulations simply require the ALJ to determine if the original listed disability has ceased.

Using the first approach, the ALJ would canvas the file for possible disabilities and the evaluation would stop if a new listed disability had developed—even if the original listed disability had ceased. Although this approach would require the ALJ to find listed disabilities not raised by the Plaintiff, the statutory language of the Social Security Act supports use of this approach: [19] "[a]ny determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Secretary." 42 U.S.C. § 423(f).

---

**18.** Where statutory language is ambiguous, courts should review the legislative history of the statutory provision. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). If Congress did not address the question raised by the facts of a certain case, then the court must decide whether the Agency's response to the ambiguity is justified by a reasonable construction of the statutory provision at issue. *See Chevron, U.S.A.,* 467 U.S. at 843, 104 S.Ct. at 2782.

**19.** "Under the rules of statutory construction, if the intent of Congress is clear from the language of the legislation itself, then the courts, as well as the implementing agency, must give effect to the statute as written." *Difford v. Secretary of Health & Human Services,* 910 F.2d 1316, 1318 (6th Cir.1990) *citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Under the second approach, at step 2, the ALJ would limit his/her findings to the prior listed impairment, excluding current impairments. If the ALJ found that the prior listed disability had ceased, the ALJ would proceed to steps 3 thru 8. At step 3, the regulations require the ALJ to determine whether the plaintiff has experienced medical improvement of his/her prior impairment(s). This inquiry excludes consideration of current impairments and asks only if the original impairment is less severe. *See* 20 C.F.R. § 404.1594(b)(1). If the answer to that question is yes, the ALJ proceeds to step 4; If the answer is no, the ALJ proceeds to step 5. *See* 20 C.F.R. § 404.1594(f)(3).

Under either step 4 or step 5, the ALJ would be required to consider both prior and current impairments to determine whether the plaintiff is disabled, pursuant to the Listings. *See* 20 C.F.R. §§ 404.-1594(f)(4) *citing* 404.1594(b)(1)–(4); 404.-1594(b)(4) *citing* (b)(5) *citing* § 404.1525 and 1526; *see also* § 404.1594(f)(5) *citing* 1594(d); § 404.1594(f)(6). If medical evidence shows that plaintiff's current impairments meet or exceed those in the listings, then disability will be found to continue and the analysis stops. 20 C.F.R. § 404.-1594(b)(4), (5) *citing* §§ 404.1525 and 404.-1526.

The ALJ never reaches a determination of RFC in steps 4 and 5 unless he/she finds that plaintiff's impairments are not severe enough to invoke the Listing's presumption of *per se* disability. *See* 20 C.F.R. § 404.-1525. This means that the ALJ does not proceed to steps 6 and 7 unless the ALJ can show that medical improvement of all plaintiff's prior and current disabilities are related to his/her ability to work. 20 C.F.R. § 404.1594(f)(4), (5).

Thus, under either approach, the regulations require the ALJ to determine not only whether the original listed impairment still meets or exceeds the Listing, but also if current impairments meet or exceed those in the Listings. The ALJ can move to steps 6, 7, and 8 to determine RFC according to vocational factors and plaintiff's ability to perform past work—or any other work—in the national economy, only if none of the Listings apply. *See* 20 C.F.R. § 404.1594(b)(5).

Although it is not the Court's function to review the record *de novo*, the Court must determine that the ALJ has applied the correct legal standard. The Court finds that the ALJ may not have considered whether Plaintiff's current impairments, as of February 23, 1990, met or exceeded any of the impairments listed in the regulations. The ALJ appears to have missed this part of the analysis, either at step 2 or at steps 4 and 5 of the "continuing disability" evaluation. The Court cannot affirm the Secretary's decision because it cannot determine whether the ALJ considered the medical evidence related to Plaintiff's current condition on February 23, 1990, and its relationship to Listing 1.03(A) and (B), or to any other relevant Listings.

## CONCLUSION

Accordingly, the Court **REVERSES** the Secretary's decision, and **REMANDS** this case to the ALJ for rehearing on the issue of continuing disability. *See Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). The ALJ should consider all the medical evidence available on February 23, 1990 as it relates to Listing 1.03(A) and (B) or other relevant Listings.[20] The Court directs the Clerk of the Court to **ENTER JUDGMENT** in favor of the Plain-

---

**20.** The ALJ need not consider any evidence after February 23, 1990. This finding expressly rejects the holding in *Difford v. Secretary of Health and Human Services,* 910 F.2d 1316, 1320 (6th Cir.1990), insofar as it interprets "current conditions" under 42 U.S.C. § 423(f) to include new evidence of impairments since the most recent termination hearing. If the SSA determines that plaintiff's benefits were properly terminated, but Plaintiff's impairments since that date are severe enough to meet or exceed a

listed impairment or are so limiting that Plaintiff is now unable to engage in "substantial gainful employment," the Court believes that evidence of these conditions are the proper subject of a new application for social security benefits. *See Carpentier v. Sullivan,* 755 F.Supp. 816 (C.D.Ill.1990). If the SSA determines that its termination decision was erroneous, the Court will re-examine the issue of Plaintiff's benefits and present impairments in light of that decision.

tiff [Doc. # 13, Part I] and against Defendant. [Doc. # 14, Part I]. Costs are awarded to the Plaintiff. *Melkonyan,* —— U.S. ——, 111 S.Ct. 2157. Case **TERMINATED.**