Justice Breyer,
concurring.
I join the Court’s opinion with three qualifications. First, I cannot say that the statute’s language by itself is determinative. Linguistically speaking, the word “now” in the phrase “now under Federal jurisdiction,” 25 U. S. C. §479, may refer to a tribe’s jurisdictional status as of 1934. But one could also read it to refer to the time the Secretary of the Interior exercises his authority to take land “for Indians.” §465. Compare Montana v. Kennedy, 366 U. S. 308, 311-312 (1961) (“now” refers to time of statutory enactment), with Difford v. Secretary of Health and Human Servs., 910 F. 2d 1316, 1320 (CA6 1990) (“now” refers to time of exercise of delegated authority); In re Lusk's Estate, 336 Pa. 465,467-468, 9 A. 2d 363, 365 (1939) (property “now” owned refers to property owned when a will becomes operative). I also concede that the Court owes the Interior Department the kind of interpretive respect that reflects an agency’s greater knowledge of the circumstances in which a statute was enacted, cf. Skidmore v. Swift & Co., 323 U. S. 134 (1944). Yet because the Department then favored the Court’s present interpretation, see infra, at 397, that respect cannot help the Department here.
Neither can Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (1984), help the Department. The scope of the word “now” raises an interpretive question of considerable importance; the provision’s legislative history makes clear that Congress focused directly upon that language, believing it definitively resolved a specific un *397 derlying difficulty; and nothing in that history indicates that Congress believed departmental expertise should subsequently play a role in fixing the temporal reference of the word “now.” These circumstances indicate that Congress did not intend to delegate interpretive authority to the Department. Consequently, its interpretation is not entitled to Chevron deference, despite linguistic ambiguity. See United States v. Mead Corp., 533 U. S. 218, 227, 229-230 (2001).
Second, I am persuaded that “now” means “in 1934” not only for the reasons the Court gives but also because an examination of the provision’s legislative history convinces me that Congress so intended. As I read that history, it shows that Congress expected the phrase would make clear that the Secretary could employ §465’s power to take land into trust in favor only of those tribes in respect to which the Federal Government already had the kinds of obligations that the words “under Federal jurisdiction” imply. See Hearings on S. 2755 et al.: A Bill to Grant to Indians Living Under Federal Tutelage the Freedom to Organize for Purposes of Local Self-Government and Economic Enterprise, before the Senate Committee on Indian Affairs, 73d Cong., 2d Sess., pt. 2, pp. 263-266 (1934). Indeed, the very Department official who suggested the phrase to Congress during the relevant legislative hearings subsequently explained its meaning in terms that the Court now adopts. See Letter from John Collier, Commissioner, to Superintendents (Mar. 7, 1936), Lodging of Respondents (explaining that §479 included “persons of Indian descent who are members of any recognized tribe that was under Federal jurisdiction at the date of the Act”).
Third, an interpretation that reads “now” as meaning “in 1934” may prove somewhat less restrictive than it at first appears. That is because a tribe may have been “under Federal jurisdiction” in 1934 even though the Federal Government did not believe so at the time. We know, for exam- *398 pie, that following the Indian Reorganization Act’s enactment, the Department compiled a list of 258 Tribes covered by the Act; and we also know that it wrongly left certain tribes off the list. See Brief for Law Professors Specializing in Federal Indian Law as Amicus Curiae 22-24; Quinn, Federal Acknowledgment of American Indian Tribes: Historical Development of a Legal Concept, 34 Am. J. Legal Hist. 331, 356-359 (1990). The Department later recognized some of those Tribes on grounds that showed that it should have recognized them in 1934 even though it did not. And the Department has sometimes considered that circumstance sufficient to show that a tribe was “under Federal jurisdiction” in 1934 — even though the Department did not know it at the time.
The statute, after all, imposes no time limit upon recognition. See § 479 (“The term ‘Indian’... shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction ...” (emphasis added)). And administrative practice suggests that the Department has accepted this possibility. The Department, for example, did not recognize the Stillaguamish Tribe until 1976, but its reasons for recognition in 1976 included the fact that the Tribe had maintained treaty rights against the United States since 1855. Consequently, the Department concluded that land could be taken into trust for the Tribe. See Memorandum from Associate Solicitor, Indian Affairs, to Assistant Secretary, Indian Affairs, Request for Reconsideration of Decision Not to Take Land in Trust for the Stillaguamish Tribe (Oct. 1, 1980), Lodging of Respondents 6-7. Similarly, in 1934 the Department thought that the Grand Traverse Band of Ottawa and Chippewa Indians had long since been dissolved. Grand Traverse Band of Ottawa & Chippewa Indians v. Office of U. S. Attorney for Western Dist. of Mich., 369 F. 3d 960, 961, and n. 2 (CA6 2004). But later the Department recognized the Tribe, considering it to have existed continuously since 1675. 45 Fed. Reg. 19321 *399 (1980). Further, the Department in the 1930’s thought that an anthropological study showed that the Mole Lake Tribe no longer existed. But the Department later decided that the study was wrong, and it then recognized the Tribe. See Memorandum from the Solicitor to the Commissioner of Indian Affairs 2758, 2762-2763 (Feb. 8, 1937) (recognizing the Mole Lake Indians as a separate Tribe).
In my view, this possibility — that later recognition reflects earlier “Federal jurisdiction” — explains some of the instances of early Department administrative practice to which Justice Stevens refers. I would explain the other instances to which Justice Stevens refers as involving the taking of land “for” a tribe with members who fall under that portion of the statute that defines “Indians” to include “persons of one-half or more Indian blood,” §479. See 1 Dept. of Interior, Opinions of the Solicitor Relating to Indian Affairs, 1917-1974, pp. 706-707 (Shoshone Indians), 724-725 (St. Croix Chippewas), 747-748 (Nahma and Beaver Indians) (1979).
Neither the Narragansett Tribe nor the Secretary has argued that the Tribe was under federal jurisdiction in 1934. Nor have they claimed that any member of the Narragansett Tribe satisfies the “one-haF or more Indian blood” requirement. And I have found nothing in the briefs that suggests the Narragansett Tribe could prevail on either theory. Each of the administrative decisions just discussed involved post-1934 recognition on grounds that implied a 1934 relationship between the Tribe and Federal Government that could be described as jurisdictional, for example, a treaty with the United States (in effect in 1934), a (pre-1934) congressional appropriation, or enrollment (as of 1934) with the Indian Office. I can find no similar indication of 1934 federal jurisdiction here. Instead, both the State and Federal Government considered the Narragansett Tribe as under state, but not under federal, jurisdiction in 1934. And until the 1970’s there was “little Federal contact with the Nar *400 ragansetts as a group.” Memorandum from Deputy Assistant Secretary — Indian Affairs (Operations) to Assistant Secretary — Indian Affairs, Recommendation and Summary of Evidence for Proposed Finding for Federal Acknowledgment of Narragansett Indian Tribe of Rhode Island Pursuant to 25 CFR 83, p. 8 (July 29,1982). Because I see no realistic possibility that the Narragansett Tribe could prevail on the basis of a theory alternative to the theories argued here, I would not remand this case.
With the qualifications here expressed, I join the Court’s opinion and its judgment.